UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MORGAN STANLEY & CO.
INCORPORATED,

              Plaintiff,

     -against-

CONRAD P. SEGHERS,

              Defendant.

Civ. Action No.: 10 CV 5378 (DLC)(JCF)

# MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

John M. Callagy
David Zalman
Wook Kim
KELLEY DRYE & WARREN LLP
101 Park Avenue,
New York, New York 10178

Ph.  (212) 808-7800
Fax: (212) 808-7897

*Attorneys for Plaintiff*
*Morgan Stanley & Co. Incorporated*

# TABLE OF CONTENTS

                                                                                           **Page**

PRELIMINARY STATEMENT .......................................................................................1

STATEMENT OF FACTS...........................................................................................3

     The 2005 Arbitration And Settlement ...................................................4

     The SEC & NFA Actions ...................................................................5

     Judge Lynch Dismisses A Lawsuit That Seghers Filed In This Court...............................6

     A New York State Court Stayed And Dismissed An Arbitration
     Subsequently Filed By Seghers in 2007 ...................................................10

     Seghers Files An Arbitration Before FINRA In 2010 To Re-Litigate The Same
     Claims Previously Dismissed By Judge Lynch And Justice Moskowitz ........................11

ARGUMENT ............................................................................................13

POINT I      THIS COURT SHOULD ENJOIN SEGHERS FROM PURSUING THE
             TEXAS ARBITRATION BECAUSE HE WAIVED ANY ALLEGED
             RIGHT TO ARBITRATION BY FILING THE  SOUTHERN DISTRICT
             ACTION IN JUNE 2006, AND IN ANY EVENT,  SEGHERS' CLAIMS
             ARE BARRED BY THE DOCTRINE OF RES JUDICATA .............................13

          A.  Morgan Stanley Is Likely To Succeed On The Merits Of Its Claims ...........14

               1.   Seghers Waived Any Alleged Right To Arbitration ....................14

               2.   Seghers' Claims Are Barred By The Doctrine of *Res Judicata* ...... 17

          B.  Morgan Stanley Will Be Irreparably Harmed Absent An Injunction.............20

POINT II     ALTERNATIVELY, THE COURT SHOULD ISSUE AN  ORDER
             PURSUANT TO THE ALL WRITS ACT ENJOINING  SEGHERS
             FROM PURSUING THE TEXAS ARBITRATION ..........................................21

CONCLUSION ........................................................................................23

## TABLE OF AUTHORITIES

### CASES

*Apple & Eve, LLC v. Yantai N. Andre Juice Co. Ltd.*, 610 F. Supp. 2d 226
(E.D.N.Y. 2009) ........................................................................................ 14, 15

*Arbercheski v. Oracle Corp.*, No. 05 Civ. 0591 (DLC), 2006 WL 1738046
(S.D.N.Y. June 26, 2006) ............................................................................... 16

*Banc of Am. Secs. LLC v. Independence Tube Corp.*, No. 09 C 7381, 2010 WL
1780321 (N.D. Ill. May 4, 2010) .................................................................... 14

*Cornell & Co., Inc. v. Barber & Ross Co.*, 360 F.2d 512 (D.C. Cir. 1966) ...................... 14

*Doctor's Assocs, Inc. v. Distajo*, 66 F.3d 438 (2d Cir. 1995) ...................................... 14

*Evangelical Alliance Mission/Nihon Domei Kirisuto Kyodan v. Lockman Found.*,
No. 95 Civ. 7214 (SHS), 1995 WL 688958 (S.D.N.Y. Nov. 21, 1995) ................ 17, 18

*Flynn v. U.S. Clearing, Inc.*, No.3:04CV1935 (WWE), 2005 WL 2275937 (D.
Conn. Sept. 19, 2005) ................................................................................... 18

*Gilmore v. Shearson/Am. Express Inc.*, 811 F.2d 108 (2d Cir. 1987) ........................ 15, 16

*Grumhaus v. Comerica Secs., Inc.*, 223 F.3d 648 (7th Cir. 2000) ................................. 15

*In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985) .......................................... 21, 22

*In re Suprema Specialties, Inc.*, No. 07-4100, 2008 WL 2629476 (2d Cir. July 1,
2008) .......................................................................................................... 15

*John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132 (3d Cir 1998) ........................... 17

*Klay v. United HealthGroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004) ................................ 17

*L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85 (2d Cir. 1999) ......... 18, 19, 20

*Mastercard Int'l Inc. v. Fédération Internationale De Football Ass'n*, No. 06 Civ.
3036 (LAP), 2007 WL 631312 (S.D.N.Y. Feb. 28, 2007) ................................... 17

*Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979 (2d
Cir. 1997) ................................................................................................ 13, 20

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125 (2d Cir. 2003) ........... 13, 20

*Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Benjamin*, 1 A.D.3d 39, 45 (N.Y. App. Div. 2003) ................................................................................................ 17

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Doe*, 868 F. Supp. 532 (S.D.N.Y. 1994) .......................................................................................................... 21

*Miller Brewing Co. v. Fort Worth Distrib. Co., Inc.*, 781 F.2d 494 (5th Cir. 1986) ......... 17

*Monahan v. New York City Dept. of Corrections*, 214 F.3d 275 (2d Cir. 2000) .............. 18

*Olick v. Dippel,* No. 03-3093, 2004 WL 603432 (3d Cir. Mar. 24, 2004) ...................... 17

*In re PaineWebber Ltd. P'ship Litig.*, No. 94 Civ. 8547 (SHS), 1996 WL 374162, at *4 (S.D.N.Y. July 1, 1996) .................................................................... 17

*UBS Secs. LLC v. Voegeli*, 684 F. Supp. 2d 351 (S.D.N.Y. 2010) ................................. 20

*Y & A Group Secs. Litig. v. Y & A Group, Inc.*, 38 F.3d 380 (8th Cir. 1994) ............ 17, 22

## STATUTES

28 U.S.C. § 1651 ........................................................................................................ 21

Fed. R. Civ. P. 65(a) ..................................................................................................... 1

N.Y. C.P.L.R. § 202 ...................................................................................................... 7

N.Y. C.P.L.R. § 7502 .................................................................................................. 10

N.Y. C.P.L.R. § 7503 .................................................................................................. 10

FINRA Code of Arb. P. R. 12504 ............................................................................... 16

Plaintiff Morgan Stanley & Co. Incorporated ("Plaintiff" or "Morgan Stanley"), as successor in interest to Morgan Stanley DW, Inc., submits this memorandum of law in support of its motion, pursuant to Federal Rule of Civil Procedure 65(a), for a preliminary injunction enjoining Defendant Conrad P. Seghers ("Defendant" or "Seghers") from pursuing an arbitration that Seghers commenced before the Financial Industry Regulatory Authority ("FINRA") that would be heard in Texas (the "Texas Arbitration").

An injunction is warranted, *inter alia*, because (i) Seghers waived any alleged right to arbitration by filing a complaint that raised claims based on the same factual allegations against Morgan Stanley in this Court in 2006; (ii) this Court previously dismissed as untimely the claims Seghers now seeks to arbitrate, and (iii) Seghers' claims asserted in the Texas Arbitration are now barred by the doctrine of *res judicata*. Accordingly, Morgan Stanley should be relieved from the burden of continuing to defend against Seghers' litigation frenzy.

## PRELIMINARY STATEMENT

In April 2010, Seghers filed a Statement of Claim against Morgan Stanley in the Texas Arbitration. Seghers alleges that Morgan Stanley made "errors" with respect to option trades in certain accounts at Morgan Stanley held by hedge funds and related companies that Seghers founded and previously managed. Seghers asserts that as result of the alleged errors, the hedge funds transferred all assets from their accounts in July 2001. By letter dated August 1, 2001, Seghers, through his counsel, complained to Morgan Stanley of the alleged errors, and sought damages of "at least $35 million." Seghers asserts two causes of action in the Texas Arbitration: (1) fraud, and (2) breach of contract based on the brokerage agreements between Morgan Stanley and the hedge funds, of which Seghers claims he was a third-party beneficiary.

This is not the first time that Seghers has filed claims against Morgan Stanley based on the same allegations asserted in the Texas Arbitration. Since 2004, Seghers and his

hedge funds have barraged courts and arbitration tribunals with claims based on the same factual background and asserting the same claims that Seghers now seeks to arbitrate in the Texas Arbitration.  In April 2006, Morgan Stanley settled the claims of the hedge funds and related companies, and Morgan Stanley received a general release on behalf of the hedge funds and their respective "officers, directors, principals, [and] agents."

On June 15, 2006, before the ink had even dried on the settlement agreement with the hedge funds, Seghers, individually, filed a Complaint in this Court (the "Southern District Action"), asserting fraud claims that were largely identical, word-for-word, to Seghers' allegations in the Texas Arbitration.  On May 10, 2007, United States District Court Judge Gerard Lynch issued an Opinion and Order dismissing Seghers' claims as time-barred.  Judge Lynch ruled that under New York's borrowing statute, Texas' four-year statute of limitations applied to Seghers' fraud claims.  Relying on Seghers' own allegations, Judge Lynch found, *inter alia*, that Seghers had actual knowledge of Morgan Stanley's alleged conduct by August 1, 2001, when he sent the complaint letter to Morgan Stanley that sought $35 million in damages. Judge Lynch found the fraud claims "accrued no later than August 1, 2001, and expired, at the latest on August 1, 2005," yet Seghers "did not commence [the Southern District Action] until June 15, 2006, more than four years after his fraud claims accrued …"  Judge Lynch, therefore, dismissed Seghers' fraud claims as time-barred.

One month later, in a plain attempt to circumvent Judge Lynch's Order dismissing his claims, Seghers filed an arbitration (the "IHO Arbitration") with the National Association of Securities Dealers ("NASD"), purportedly on behalf of Integral Hedging Offshore, Ltd. ("IHO"). Seghers asserted claims for fraud and breach of contract based on the same factual allegations as the claims already dismissed by Judge Lynch.  Morgan Stanley filed a Petition in the Supreme

Court of the State of New York to stay and dismiss the IHO Arbitration.  By Order dated October 9, 2007, New York State Supreme Court Justice Karla Moskowitz granted Morgan Stanley's Petition, and the Court thereafter issued a Judgment "that the IHO Arbitration is barred by the applicable statute of limitations and is, therefore, permanently stayed and dismissed."

Relentlessly, on April 29, 2010, Seghers filed his Statement of Claim in the Texas Arbitration, in which Seghers seeks to arbitrate the same exact claims that Judge Lynch and Justice Moskowitz have dismissed as time-barred.  Seghers, having already lost his "second" bite at the apple before Justice Moskowitz, now seeks a "third" bite at the apple in the Texas Arbitration.  Morgan Stanley seeks to bring this conduct to an end.  While the procedural history is lengthy due to Seghers' repeated attempts to relitigate the same claims, basic legal principles foreclose Seghers' latest attempt to end-run the prior court orders.  First, by filing a complaint that raised claims based on the same factual allegations, and litigating those claims, against Morgan Stanley in the Southern District Action, Seghers waived any alleged right to arbitration. Second, Seghers' claims are now barred by the doctrine of *res judicata* because they arise out of the same allegations that Seghers raised in the Southern District Action, and the same claims that Judge Lynch dismissed.  The Court, therefore, should issue an Order enjoining Seghers from pursuing the Texas Arbitration.

## STATEMENT OF FACTS

In the late 1990s, Seghers, along with his business partner Samir El Bizri ("Bizri"), and later James Dickey ("Dickey"), established several hedge funds and related entities, including Bizri Capital Partners, Inc., Integral Hedging, L.P., Integral Arbitrage, L.P., and Galileo Fund, L.P. (collectively, the "Hedge Funds").  (*See* Ex. 1 ¶ 19.)[1]  In 1999, the Hedge

---

[1]    All references to "Ex. __" refer to the exhibits attached to the accompanying Declaration of Wook Kim, dated July 14, 2010.

Funds opened several accounts in Morgan Stanley's Burbank, California branch ("Hedge Funds' Accounts"). (Ex. 1 at ¶ 51; Ex. 2 at ¶ 29.)  Although they opened the accounts in 1999, it was not until December 2000 that Seghers and Bizri began to trade aggressively in highly sophisticated financial products.  As the market and the Hedge Funds' Accounts declined in 2001, certain of the Hedge Funds' Accounts received significant margin calls (i.e., demands from Morgan Stanley to meet minimum account equity requirements) beginning in or around March 2001.

In or around March 2001, Seghers, through his business partner, Bizri, began to complain about alleged "errors" by Morgan Stanley with respect to option trades in certain of the Hedge Funds' Accounts.  (Ex. 1 at ¶ 59; Ex. 2 at ¶ 32.)  The complaints were, in large part, part of a scheme by Seghers to avoid, or at least prolong, having to meet the margin calls.

In July 2001, Seghers transferred the assets held in the Hedge Funds' Accounts to another broker-dealer, after which the Hedge Funds' Accounts were closed.  (Ex. 1 at ¶ 81; Ex. 2 at ¶ 54.)  By letter dated August 1, 2001, Seghers, through his counsel, complained to Morgan Stanley of "many serious errors made in the handling of Integral's accounts" and sought consequential damages of "at least $35 million." (Ex. 3 at 1.)

**The 2005 Arbitration And Settlement**

In December 2001, several of the Hedge Funds' investors filed a lawsuit in Texas state court against Seghers, Dickey, the Hedge Funds, and others, claiming that the Hedge Funds defrauded them into investing millions of dollars.  (Ex. 4 at ¶ 19.)  The investors' Amended Petition alleged that Seghers and others misappropriated the Hedge Funds' assets, misrepresented the Hedge Funds' investment strategies and performance, fraudulently over-billed the investors, falsified the Hedge Funds' books and records, and improperly invested more than $40 million dollars in illiquid private investments, including distressed debt. (*See id.* ¶ 19.)

4

By Order dated August 19, 2002 (the "Receiver Order"), the Texas court appointed a receiver (the "Receiver") over Integral Hedging, L.P., and Integral Arbitrage, L.P. (the "Integral Funds") for the management, recovery, and preservation of the Integral Funds' assets. (*See* Ex. 4 ¶ 3.)  The Receiver Order authorized the Receiver to take full control over, and operate and conduct the business of, the Integral Funds, and to file, prosecute, or defend any lawsuits on the Integral Funds' behalf.  (*See id.*)

In mid-2002, certain of the Hedge Funds, including the Integral Funds, filed suit against Morgan Stanley and others in Texas state court.  After the matter was compelled to arbitration in 2002, the Receiver, on behalf of the Integral Funds, Bizri, Bizri Capital Partners, Inc., and Galileo Fund, L.P., submitted claims against Morgan Stanley to arbitration (the "Integral Arbitration") before the National Association of Securities Dealers ("NASD").  (Ex. 4.)

Morgan Stanley settled the Integral Arbitration in April 2006 pursuant to a General Release and Settlement Agreement (the "Settlement Agreement").  (Ex. 5.)  Under the terms of the Settlement Agreement, each of the claimants gave Morgan Stanley a general release on behalf of themselves, certain other entities, and "each of their current officers, directors, principals, [and] agents," among others.  (*Id.* at ¶ 3.)  The general release covered "any and all claims, demands, actions, causes of action … whether known or unknown, which the Releasors ever had, now has, or may hereafter claim to have had" against Morgan Stanley.  (*Id.*)

**The SEC & NFA Actions**

On June 16, 2004, the SEC instituted an enforcement proceeding against Seghers in the United States District Court for the Northern District of Texas alleging numerous violations of the federal securities laws, including fraud and misrepresentation relating to management of the Integral Funds (the "SEC Action").  (*See* Ex. 6.)  The SEC asserted that "Seghers fraudulently caused the [Integral] Funds to overstate to investors the value of their

5

investments in the [Integral] Funds" and consequently "misrepresented the [Integral] Funds' rates of returns." (*Id.* at ¶ 4.)

The jury in the SEC Action returned a verdict against Seghers on March 1, 2006, finding that Seghers violated various securities laws, including the anti-fraud provisions of Sections 17(a) of the Securities Act, and Section 10(b) of the Securities and Exchange Act, and Sections 206(1) and 206(2) of the Investment Advisors Act. (Ex. 7 at 16-17, 21, 24-25.)

The SEC Action followed a similar action initiated by the National Futures Association ("NFA"), a self-regulatory agency for the futures markets, against Seghers and Integral Investment Management, L.P. in February 2002 ("NFA Action"). (Ex. 8 at 3-4, 13.) As a result of the NFA Action, Seghers was expelled from the NFA and prohibited from seeking reinstatement. (*Id.* at 13.)

## Judge Lynch Dismisses A Lawsuit That Seghers Filed In This Court

On June 16, 2006, only two months after the Integral Arbitration settled, Seghers, individually, commenced the Southern District Action in this Court against Morgan Stanley. (Ex. 9.) Seghers' original Complaint in the Southern District Action asserted three causes of action: two claims for fraud, and one claim for breach of contract based on the brokerage agreements between Morgan Stanley and the Hedge Funds, of which Seghers alleged he was a third-party beneficiary. (*Id.*) Seghers later filed a Second Amended Complaint (the "Amended Complaint"), in which Seghers voluntarily withdrew the breach of contract claim, and only asserted two causes of action: (i) fraud, and (ii) "destruction of Seghers' business, name and reputation." (Ex. 2 at ¶¶ 32-76.)

Seghers alleged Morgan Stanley engaged in fraud by knowingly and falsely representing that (i) all trades in the Hedge Funds' accounts were properly placed in accordance with Seghers' instructions; (ii) errors in the Hedge Funds' account statements were easily

corrected and were only errors in the statements themselves; and (iii) the value of the Hedge

Funds' assets, as reported to Bizri and relied upon by Seghers, were correct.  (Ex. 2 at ¶ 55.)

Seghers alleged Morgan Stanley's conduct destroyed his business, name, and reputation,

including allegations that Morgan Stanley communicated with the SEC, NASD, and NFA about

the failed investments, which caused the SEC Action, the NFA Action, and which caused the

NASD to initiate an arbitration against him.  (*Id.* at ¶¶ 70, 72-74.)  He also alleged that as a result

of a litigation with several of the Hedge Funds' investors, he lost control over the Hedge Funds

in 2002.  (*Id.* at ¶ 62.)  Seghers sought damages of at least $35 million for alleged losses to the

Hedge Funds, and sought an additional $30 million from the alleged destruction of his business

and reputation.  (*Id.* at ¶ 76.)  These are the same alleged damages as he now seeks to recover in

the Texas Arbitration.  (*Compare* Ex. 1 at ¶ 95, with Ex. 2 at ¶ 76 and Ex. 9 at ¶ 64.)

By Opinion and Order dated May 10, 2007, United States District Court Judge

Gerard Lynch dismissed the Southern District Action Amended Complaint in its entirety on the

ground that Seghers' asserted claims were time-barred.  (Ex. 8.)  Judge Lynch explained that a

federal court sitting in diversity jurisdiction applies the choice of law analysis of the forum state

to determine which statute of limitations applies.  (*Id.* at 6.)  Judge Lynch further explained that

under New York's borrowing statute, Section 202 of New York's Civil Practice Law and Rules

("N.Y. C.P.L.R."), the applicable statute of limitations is the shorter of New York's limitation

period or the limitations period of the state in which the non-resident's claims accrued.  (*Id.*)  As

Seghers is a Texas resident, and his claims accrued in Texas, the Court compared New York and

Texas limitations rules.  (*Id.* at 6-7.)

With respect to Seghers' fraud claim, Judge Lynch determined that Texas

provides the shorter limitation period: four years, which commences when "a plaintiff learns of a

wrongful injury, or of facts that should lead to an investigation." (Ex. 8 at 7.) He explained that

the limitations clock starts running once a plaintiff is aware of his injury, even if he does not yet

know the specific cause of the injury, the party responsible for it, or the extent of it. (*Id.*)

Based on Seghers' allegations in the Amended Complaint, Judge Lynch ruled that

the fraud claim was time-barred because the claim accrued, at the latest, by the date of Seghers'

complaint letter on August 1, 2001, but the claim was not brought within four years. (Ex. 8 at 7-

8.) Judge Lynch explained:

> In July 2001, as a result of his dissatisfaction with the same errors and
> deceptions that underlie this fraud claim, plaintiff closed his accounts with
> Morgan Stanley. On August 1, 2001, plaintiff's counsel sent defendant a
> letter accusing defendant of "serious errors" that resulted in "direct and
> consequential damages" of "as much as $35 million." Thus, at least as of
> August 1, 2001, plaintiff had sufficient knowledge of his injury to cause
> him to begin investigating its cause; indeed, the August 1, 2001, letter
> reveals that plaintiff had actually begun that instigation.

(*Id.* at 7 (citations omitted).)

Judge Lynch rejected Seghers' argument that the fraud claim did not accrue until

he actually discovered the full extent of the alleged fraudulent activity in 2003 or 2004. (Ex. 8)

Judge Lynch explained:

> Plaintiff's claims that he did not learn about the specific details of the
> fraud until 2004 is irrelevant to the limitations analysis, just as it is of no
> moment that plaintiff did not know the "full extent" of his injury until that
> time. All that is necessary for the limitations period to commence is
> knowledge of the "general cause" of the injury, in this case, defendant's
> mismanagement of plaintiff's accounts. Accordingly, plaintiff's fraud
> claim accrued no later than August 1, 2001, and expired, at the latest, on
> August 1, 2005. Because plaintiff did not commence this action until June
> 15, 2006, more than four years after his fraud claim accrued, the fraud
> claim is time-barred.

(*Id.* at 8 (citations omitted).)

With respect to tolling, Judge Lynch stated that under Texas law, the statute of

limitations on a fraud claim may be tolled if the fraud was either "(1) 'inherently unknowable'

8

and 'objectively verifiable' (the 'discovery rule'), or (2) fraudulently concealed from plaintiff

(the 'fraudulent concealment doctrine')." (Ex. 8 at 9 (citations omitted).) Judge Lynch

explained that "both the discovery rule and the fraudulent concealment doctrine are satisfied only

if the injured party is unlikely to or cannot discover the injury 'within the prescribed limitations

period' despite reasonable diligence." (*Id.* at 10 (citations omitted).)

Judge Lynch ruled there was no basis to toll the limitations period for Seghers'

fraud claim:

> Plaintiff does not allege that the fraud was "inherently
> unknowable," or that plaintiff, acting with reasonable diligence, could not
> have discovered defendant's alleged fraudulent activity during the
> limitations period. Indeed, any allegations of fraudulent concealment
> would be contradicted by plaintiff's assertions that defendant actually
> confessed at least some of its mismanagement to Seghers himself in May
> 2001. In addition, according to the complaint, plaintiff actually uncovered
> some of the fraudulent activity while he was still a customer of Morgan
> Stanley. Thus, plaintiff can not, and does not, allege that he could not
> have discovered the activity or that such activity was "inherently
> unknowable." To the contrary, the complaint reveals that plaintiff had
> actual knowledge of the fraudulent activity; indeed, it was this very
> knowledge that caused plaintiff to terminate his relationship with
> defendant in July 2001.

> Therefore, the statute of limitations should not be tolled in this
> case, and plaintiff's fraud claim is time-barred.

(Ex. 8 at 10-11 (citations and footnotes omitted).)

Judge Lynch also dismissed Seghers' second cause of action for "destruction of

business, name and reputation." (Ex. 8 at 12.) Judge Lynch ruled the claim was an

unrecognized tort claim that should be analyzed as a defamation claim. (*Id.* at 13.) Judge Lynch

found that, under New York's borrowing statute, New York law applies to the defamation claim.

(*Id.* at 13, n.6.) Judge Lynch explained that New York law establishes a one-year statute of

limitations on defamation claims, which begins to run from the time of the utterance. (*Id.* at 13.)

Judge Lynch ruled that the second cause of action "must be dismissed as time-barred, since the

allegedly defamatory remarks were made between 2001-2003, well over one year before the
initiation of plaintiff's suit." (*Id.* at 13-14.)

On May 11, 2007, the Clerk of this Court entered a final Judgment against
Seghers dismissing the Amended Complaint in its entirety. (Ex. 10.) Seghers, who was
represented by counsel in the Southern District Action, did not appeal the Judgment.

**A New York State Court Stayed And Dismissed An**
**Arbitration Subsequently Filed By Seghers in 2007**

The next month, in June 2007, Seghers filed an arbitration with NASD
purportedly on behalf of Integral Hedging Offshore, Ltd. ("IHO"), an entity that he had earlier
operated (the "IHO Arbitration"). (Ex. 11.) IHO had not been a party to the earlier Integral
Arbitration. Seghers alleged in the IHO Arbitration, as he had in the Southern District Action,
that Morgan Stanley made "errors" related to options trades in the Hedge Funds' Accounts. (*Id.*
at ¶¶ 1, 26, 32.) Moreover, Seghers used the same law firm in each proceeding, and Seghers'
Statement of Claim in the IHO Arbitration claim was nearly identical, word-for-word, to the
Amended Complaint he had filed in the Southern District Action. (*Compare* Ex. 11 with Ex. 2.)
He re-asserted the same fraud claim that Judge Lynch had ruled, just the prior month, was time-
barred, and the same breach of contract claim that he had asserted in his original Complaint in
the Southern District Action, and which he later voluntarily withdrew when he filed the
Amended Complaint. (*Compare* Ex. 11 with Ex. 2 and Ex. 9.)

On August 1, 2007, Morgan Stanley filed a Petition in the Supreme Court of the
State of New York to stay and dismiss the IHO Arbitration pursuant to N.Y. C.P.L.R. §§ 7502
and 7503 on the grounds that IHO's claims were time-barred. (*See* Ex. 12.) Morgan Stanley
explained that Seghers was trying to end run around Judge Lynch's decision, to use IHO to
commence yet another arbitration, and that Judge Lynch had already dismissed a similar action

brought by Seghers, holding all claims were time-barred as a matter of law.  (*Id.* at 2, 8-9.)

Regarding the contract claim, Morgan Stanley argued Texas' four-year limitations period

applied, and because any breach of contract would have occurred before the Hedge Funds'

Accounts were closed by July 2001, any contract claim should have been brought prior to July

2005.  (*Id.* at 13-14.)  Morgan Stanley also asserted that the Receiver had gained control of IHO,

that Seghers no longer had control over IHO, and that when Morgan Stanley settled the Integral

Arbitration in 2006, the Settlement Agreement included a release of claims by IHO.  (*Id.* at 4-5.)

On October 9, 2007, New York State Supreme Court Justice Karla Moskowitz

rendered a Decision and Order granting Morgan Stanley's Petition to permanently stay the IHO

Arbitration and dismissing all claims made in the IHO Arbitration.  (Ex. 13.)  The Clerk of the

Court entered a Judgment on October 19, 2007 "that the IHO Arbitration is barred by the

applicable statute of limitations and is, therefore, permanently stayed and dismissed."  (Ex. 14 at

2.)

**Seghers Files An Arbitration Before FINRA In 2010 To Re-Litigate The
Same Claims Previously Dismissed By Judge Lynch And Justice Moskowitz**

In yet another plain attempt to end-run Judge Lynch's Opinion and Order

dismissing the Southern District Action, as well as Justice Moskowitz's Decision and Order

dismissing the IHO Arbitration, in April 2010 Seghers commenced the Texas Arbitration before

FINRA. (Ex. 1.)  Seghers' claims in the Texas Arbitration are based on the same alleged facts as

the claims made in the Southern District Action and the IHO Arbitration, which claims were

dismissed by both Judge Lynch and Justice Moskowitz as time-barred.  (*Compare* Ex. 1 at ¶¶ 2-

4, 17-20, 44-92, 97-110 with Ex. 2 at ¶¶ 1-4, 17-66; Ex. 9 at ¶¶ 1-3, 16-19, 21-63, 66-99; and Ex.

11 at ¶¶1-3, 15-17, 19-60, 64-67.)  Seghers reasserts exactly the same breach of contract claim

that he asserted in his original Complaint in the Southern District Action, and that he voluntarily

withdrew when he filed the Amended Complaint in that proceeding.  (*Compare* Ex. 1 at ¶¶ 97-100, with Ex. 9 at ¶¶ 66-69.)  Seghers seeks the same damages that he sought in the Southern District Action:  $35 million for alleged losses to the Hedge Funds, and an additional $30 million from the alleged destruction of his business and reputation.  (*Compare* Ex. 1 at ¶ 95, with Ex. 2 at ¶ 76 and Ex. 9 at ¶ 64.)

Although Judge Lynch ruled that Seghers' claims are time-barred, Seghers contends in the Texas Arbitration that the Southern District Action was "never heard."  (Ex. 1 at ¶ 23.)  He seeks to end-run Judge Lynch's ruling that he is not entitled to tolling of the statute of limitations for his fraud claim, by arguing that there is a "new tolling period, with an effective start date of Tuesday, December 19, 2006."  (*Id.*)  Seghers alleges three "tolling period dates": (1) November 7, 2006, when he allegedly discovered new evidence during discovery in the SEC Action; (2) December 15, 2006 (it is entirely unclear from his Statement of Claim why he believes this is an alleged tolling date); and (3) December 19, 2006, the date of an NASD News Release.  (*Id.* at ¶¶ 24-34.)  Problematic for Seghers, however, is that all of these dates precede Judge Lynch's Opinion and Order, and Seghers could have raise these alleged discoveries in the Southern District Action.  Indeed, Seghers admits he filed his response to Morgan Stanley's Motion to Dismiss in the Southern District Action on December 15, 2006.  (*Id.* at ¶ 29.)  The NASD News Release came out 4 days after he filed his response, and five months prior to Judge Lynch's Opinion and Order.  Seghers could have raised the alleged "tolling dates" in the Southern District Action, and by failing to do so, has now waived those arguments.

Apart from the fact that Seghers could have raised the alleged "tolling dates" in the Southern District Action, there is no basis to toll the statute of limitations.  As Judge Lynch previously ruled, Seghers is not entitled to tolling of the limitations period for his fraud claim

because he "had actual knowledge of the [allegedly] fraudulent activity" in July 2001.  (Ex. 8 at 11.)

## ARGUMENT

## POINT I

### THIS COURT SHOULD ENJOIN SEGHERS FROM PURSUING THE TEXAS ARBITRATION BECAUSE HE WAIVED ANY ALLEGED RIGHT TO ARBITRATION BY FILING THE SOUTHERN DISTRICT ACTION IN JUNE 2006, AND IN ANY EVENT, SEGHERS' CLAIMS ARE BARRED BY THE DOCTRINE OF *RES JUDICATA*

Morgan Stanley is entitled to a preliminary injunction enjoining Seghers from pursuing the Texas Arbitration pending this Court's determination that Seghers has waived any alleged right to arbitration and that the claims he asserts in the Texas Arbitration are barred by the doctrine of *res judicata*.  In order to obtain preliminary injunctive relief, Morgan Stanley must demonstrate "(1) that it will be irreparably harmed if an injunction is not granted, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor."  *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003). *See also Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir. 1997).

As set forth below, the Court should enjoin Seghers from pursuing the Texas Arbitration because Morgan Stanley is likely to succeed on the merits of its claims for declarations that (i) Seghers waived any alleged right to arbitration by litigating claims in the Southern District Action based on the same allegations as the claims that he seeks to arbitrate; and (ii) in any event, the claims are precluded by the doctrine of *res judicata* because Judge Lynch already dismissed his claims on the merits.   Moreover, absent an injunction, Morgan

13

Stanley would be irreparably harmed, as it would be forced to arbitrate claims that this Court has already adjudicated.

**A.      Morgan Stanley Is Likely To Succeed On The Merits Of Its Claims**

     **1.      Seghers Waived Any Alleged Right To Arbitration**

By voluntarily filing the Southern District Action in 2006, and choosing to litigate his claims in a court, Seghers waived any alleged right to arbitrate the claims he now asserts in the Texas Arbitration. [2]

"A party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right." *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 455 (2d Cir. 1995); *see also Apple & Eve, LLC v. Yantai N. Andre Juice Co. Ltd.*, 610 F. Supp. 2d 226, 229 (E.D.N.Y. 2009) (quoting *Cornell & Co., Inc. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966)). "In this Circuit, a party may waive its right to arbitrate in one of two ways: by expressly indicating that it wishes to resolve its claims before a court . . . or by impliedly waiving its right to enforce a contractual arbitration clause 'by engag[ing] in protracted litigation that results in prejudice to the opposing party . . .'" *Apple & Eve, LLC*, 610 F. Supp. 2d at 229 (citations omitted).

Here, Seghers waived any alleged right to arbitrate his claims by previously initiating a litigation on the same claims against Morgan Stanley in this Court in the Southern District Action.  Where, as here, "a party ... chooses a judicial forum for the resolution of a dispute[, it] is presumed to have waived its right to arbitrate." *Banc of Am. Secs. LLC v. Independence Tube Corp.*, No. 09 C 7381, 2010 WL 1780321, at *7 (N.D. Ill. May 4, 2010)

---

[2]    In his Statement of Claim in the Texas Arbitration, Seghers does not allege he was a customer of Morgan Stanley, nor does he cite any agreement that would require arbitration of his claims against Morgan Stanley.  (*See* Ex. 1.)

(citation omitted).  *See also Gilmore v. Shearson/Am. Express Inc.*, 811 F.2d 108, 112 (2d Cir.

1987) (finding express waiver where plaintiff withdrew his previous motion to compel

arbitration, only to file a new motion later in the same action); *Apple & Eve*, 610 F. Supp. 2d at

229.

   For example, in *In re Suprema Specialties, Inc.*, No. 07-4100, 2008 WL 2629476,

at *1 (2d Cir. July 1, 2008) the Second Circuit found that "the parties chose to waive arbitration

by proceeding with a court action."  Similarly, in *Grumhaus v. Comerica Securities, Inc.*, 223

F.3d 648, 651 (7th Cir. 2000), the Seventh Circuit held that shareholders who originally

commenced a state court action against a brokerage firm for an unauthorized transaction had

thereby waived their right to arbitrate similar claims based on similar facts.  In that case, a few

months after the state court dismissed the shareholders' claims with leave to replead, the

shareholders filed an NASD arbitration.  The brokerage firm refused to arbitrate, claiming the

shareholders had waived any right to arbitration.  The shareholders filed an action in federal

district court to compel arbitration.  Although the district court found no waiver, because the

issues in arbitration were different than those in the earlier court action, the Seventh Circuit

vacated the district court's order because the claims arose from the same set of facts.  The

Seventh Circuit held that when the shareholders "chose to file suit against [the brokerage firm]

over the wrongful liquidation of their assets, they waived their right to have an arbitrator resolve

that dispute." *Id.* at 652.

   Like the investors in *Grumhaus*, Seghers previously initiated litigation of his

claims in court which resulted in almost a year of litigation during which Morgan Stanley

incurred significant costs defending itself, and which ultimately resulted in the adjudication of

Seghers' claims as time-barred.  Seghers was represented by counsel in the Southern District

Action, and he chose not to appeal Judge Lynch's decision. Seghers now seeks to arbitrate the exact same fraud claim that he previously litigated in the Southern District Action, and which was dismissed on the merits. He also now seeks to arbitrate the same breach of contract claim that he asserted in his original Complaint in the Southern District Action, and which is undeniably based on the same alleged facts as the claims asserted in the Southern District Action.

Although it is unnecessary to establish prejudice where, as here, a party expressly waives arbitration, *see Gilmore*, 811 F.2d at 112, it should be noted that Morgan Stanley would unquestionably be prejudiced if Seghers is permitted to pursue his claims in arbitration. "There are two types of prejudice: substantive prejudice, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration; and prejudice due to excessive cost and time delay." *Arbercheski v. Oracle Corp.*, No. 05 Civ. 0591 (DLC), 2006 WL 1738046, at *2 (S.D.N.Y. June 26, 2006). Here, Judge Lynch dismissed claims based on the same allegations as the claims Seghers now seeks to arbitrate. The final Judgment was entered four years ago. If Seghers is permitted to arbitrate claims that were already raised in court, Morgan Stanley would unquestionably be prejudiced because it would be forced to re-litigate those same claims.

Moreover, Morgan Stanley would be prejudiced if Seghers is allowed to pursue his claims in arbitration because Morgan Stanley would have no adequate remedy in the Texas Arbitration to obtain dismissal of Seghers' claims prior to a full-blown evidentiary hearing. FINRA Code of Arbitration Procedure Rule 12504 (Motions to Dismiss) was amended in April 2009 to prohibit almost all pre-hearing motions to dismiss.[3] The Rule essentially prohibits a FINRA arbitration panel from granting a pre-hearing motion to dismiss, except in two narrow

---

[3]    FINRA Code of Arbitration Procedure Rule 12504 (Motions to Dismiss) is available at http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=7377.

16

exceptions, neither of which applies here.[4]  Thus, if Seghers is allowed to pursue the Texas

Arbitration, Morgan Stanley will be forced to participate in discovery and an evidentiary hearing,

despite that fact that the claims have already been adjudicated and are time-barred.  This is a

waste of resources and is patently unfair.

### 2.  Seghers' Claims Are Barred By The Doctrine Of *Res Judicata*

Because this Court previously issued a final Judgment dismissing Seghers' claims

in the Southern District Action, the doctrine of *res judicata* precludes Seghers from arbitrating in

the Texas Arbitration the same claims that he previously raised against Morgan Stanley.[5]

"The doctrine of *res judicata*, or claim preclusion, prevents a plaintiff from

relitigating claims that were or could have been raised in a prior action against the same

---

[4]     The exceptions are if the arbitration panel determines that (a) the non-moving party (here, Seghers) previously released the claim(s) in dispute by a signed settlement agreement and/or written release; or (b) the moving party was not associated with the account(s), security(ies), or conduct at issue.

[5]     This Court "has the power [to] enjoin arbitration when necessary to avoid relitigation of claims." *Evangelical Alliance Mission/Nihon Domei Kirisuto Kyodan v. Lockman Found.*, No. 95 Civ. 7214 (SHS), 1995 WL 688958, at *2 (S.D.N.Y. Nov. 21, 1995).  Although the Eleventh Circuit held in *Klay v. United HealthGroup, Inc.*, 376 F.3d 1092, 1109-11 (11th Cir. 2004), that the arbitrator, and not the court, should decide whether an otherwise arbitrable claim is barred by the doctrine of *res judicata*, a majority of courts, including courts in this Circuit, have determined otherwise.  *See, e.g.*, *Olick v. Dippel*, No. 03-3093, 2004 WL 603432, at *1 (3d Cir. Mar. 24, 2004) ("[F]ederal courts must intervene in the arbitration process *when faced with res judicata objections* stemming from a prior federal judgment") (emphasis added) (quoting *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 139 (3d. Cir. 1998); *Y & A Group Secs. Litig. v. Y & A Group, Inc.*, 38 F.3d 380, 382 (8th Cir. 1994) ("No matter what, courts have the power to defend their judgments as *res judicata*, including the power to enjoin or stay subsequent arbitrations"); *Miller Brewing Co. v. Fort Worth Distrib. Co., Inc.*, 781 F.2d 494, 501 (5th Cir. 1986) ("FWDC is barred from arbitration under the doctrine of *res judicata* because it could have included, and implicitly did include, in its state court proceedings a claim for the damages it now seeks to arbitrate"); *Mastercard Int'l Inc. v. Fédération Internationale De Football Ass'n*, No. 06 Civ. 3036 (LAP), 2007 WL 631312, at *1 (S.D.N.Y. Feb. 28, 2007) (enjoining foreign arbitration of claims after a New York federal district court entered final judgment on the same claims); *In re PaineWebber Ltd. P'ship Litig.*, No. 94 Civ. 8547 (SHS), 1996 WL 374162, at *4 (S.D.N.Y. July 1, 1996) ("The Court undoubtedly may enjoin (and recently has enjoined) an arbitration proceeding that would relitigate claims that have already been decided."); *Evangelical Alliance Mission*, 1995 WL 688968, at *2; *Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Benjamin*, 1 A.D.3d 39, 45 (N.Y. App. Div. 2003) ("[C]ourts have the power to defend their judgments as *res judicata*, including the power to enjoin or stay subsequent arbitrations").

defendant where that action has reached a final judgment on the merits." *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 87-88 (2d Cir. 1999). The Second Circuit has held that three elements must be present for a claim to be barred by *res judicata*: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 285 (2d Cir. 2000); *see also Evangelical Alliance Mission/Nihon Domei Kirisuto Kyodan v. Lockman Found.*, No. 95 Civ. 7214 (SHS), 1995 WL 688958, at *3-4 (S.D.N.Y. Nov. 21, 1995) (enjoining arbitration of matters that could have been raised in prior arbitration proceeding).

These three elements are satisfied here. First, the Southern District Action resulted in an adjudication on the merits. Second, the Southern District Action involved Seghers as plaintiff asserting claims against Morgan Stanley. Third, Seghers seeks to arbitrate claims that were asserted in the Southern District Action, and claims that could have been raised in that action. The fraud claim is the exact same claim that Seghers previously asserted in the Southern District Action, and that Judge Lynch ruled was time-barred. The breach of contract claim is the same claim that Seghers raised in his original Complaint in the Southern District Action. Although Seghers voluntarily withdrew the breach of contract claim when he filed the Amended Complaint, it is undeniable that he could have continued to pursue the claim in that proceeding. A final Judgment was entered in the Southern District Action, which Seghers elected not to appeal. The doctrine of *res judicata* unquestionably bars Seghers' claims in the Texas Arbitration because he is "attempting to relitigate the same case… Not only are the parties the same in both suits, but the facts are identical." *Flynn v. U.S. Clearing, Inc.*, No. 3:04CV1935 (WWE), 2005 WL 2275937, at *3 (D. Conn. Sept. 19, 2005).

Seghers' argument in the Texas Arbitration that the limitations period was tolled until December 2006, when Seghers supposedly learned of new information supporting his claims, lacks merit.  Indeed, Judge Lynch rejected Seghers' argument in his May 2007 Order, holding:

> Plaintiff's claim that he did not learn the about the specific details of the fraud until 2004 [] is irrelevant to the limitations analysis, just as it is of no moment that plaintiff did not know the "full extent" of his injury until that time.  All that is necessary for the limitations period to commence is knowledge of the "general cause" of the injury, in this case defendant's mismanagement of plaintiff's accounts.  Accordingly, plaintiff's fraud claim accrued no later than August 1, 2001, and expired, at the latest, on August 1, 2005.

(Ex. 8 at 8.)  Judge Lynch also ruled that:

> [The statute of limitations should not be tolled because] plaintiff can not, and does not, allege that he could not have discovered [Morgan Stanley's alleged] activity or that such activity was 'inherently unknowable.'  To the contrary, the complaint reveals that plaintiff had actual knowledge of the [alleged] fraudulent activity; indeed, it was this very knowledge that caused plaintiff to terminate his relationship with defendant in July 2001.

(*Id.* at 11.)  Thus, the question of whether Seghers' fraud claims may be tolled has already been adjudicated by this Court, and Seghers is precluded from raising the fraud claims again.[6]

Even if Judge Lynch had not previously determined the tolling issue, Seghers' claims would still be precluded.  "*Res judicata* applies even where new claims are based on newly discovered evidence, unless 'the evidence was either fraudulently concealed or it could not have been discovered with due diligence.'" *L-Tec Elecs. Corp.*, 198 F.3d at 88 (quoting *Saud v. Bank of N.Y.*, 929 F.2d 916, 920 (2d Cir.1991)).  Here, Seghers does not contend that he could not have discovered the new "evidence" upon which he relies.  In fact, based on Seghers'

---

[6]    The concept of "tolling" applies to fraud claims.  As Judge Lynch held, there is no basis to toll Seghers' fraud claim and, thus, while Seghers alleges generally that his claims should be tolled, there is no reason to toll the limitations period for his contract claim.

allegations in the Texas Arbitration, he learned about the so-called new evidence in late 2006, which was several months prior to Judge Lynch's May 2007 Order, as well as prior to the entry of the final Judgment. (Ex. 1 at ¶¶ 26, 30.)

Judge Lynch's Order and the final Judgment preclude Seghers from pursing his breach of contract claim in arbitration. The doctrine of *res judicata* precludes litigation of claims that "could have been raised in a prior action ..." *L-Tec Elecs. Corp.*, 198 F.3d at 87. "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *Id.* at 88. Again, Seghers did in fact raise the breach of contract claim in his original Complaint in the Southern District Action, and there is no question that he could have pursued the claim there. His breach of contract claim is now barred by *res judicata.*[7]

**B.   Morgan Stanley Will Be Irreparably Harmed Absent An Injunction**

"[T]he Second Circuit has held that a party necessarily suffers irreparable harm if 'forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable.'" *UBS Secs. LLC v. Voegeli*, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010) (citing *Merrill Lynch Inv. Managers*, 337 F.3d at 129). For example, in *Maryland Casualty Co. v. Realty Advisory Board on Labor Relations*, 107 F.3d 979 (2d Cir. 1997), the Court affirmed an order enjoining arbitration because "the time and resources [the defendant] would expend in arbitration is not compensable by any monetary award of attorneys' fees or damages . . ." *Id.* at 985.

---

[7]      As decided by Justice Moskowitz in her 2007 Decision and Order and the Judgment as entered by the clerk of the court, a breach of contract claim would have a four-year limitations period, the claim would have accrued by the time the Hedge Funds' Accounts were closed in July 2001, and thus a claim for breach of contact based on the Hedge Funds' Accounts should have been filed by July 2005. (*See* Exs. 13; 14 at 2 and 12 at 8-9, 13-4.) Seghers' contract claim is time-barred because he did not file the claim within that period. (Ex. 14 at 2.)

Morgan Stanley would be irreparably harmed if an injunction does not issue because, as explained above, there is no provision in the FINRA Code of Arbitration Procedure under which it could make a pre-hearing motion to dismiss.  In addition, Morgan Stanley would be irreparably harmed if an injunction does not issue, because it would be forced to arbitrate Seghers' claims through a full evidentiary hearing, causing it to expend significant effort and resources Morgan Stanley could never recover.

Seghers, in contrast, will not be prejudiced if he is enjoined from arbitration, as he previously had full and ample opportunity to raise and litigate his claims.  There is already a final Judgment on Seghers' claims, and it should be just that:  final.  The balance of equities is overwhelmingly in Morgan Stanley's favor, and the Court should enjoin Seghers from pursuing the Texas Arbitration.

## POINT II

### ALTERNATIVELY, THE COURT SHOULD ISSUE AN ORDER PURSUANT TO THE ALL WRITS ACT ENJOINING SEGHERS FROM PURSUING THE TEXAS ARBITRATION

The All Writs Act, 28 U.S.C. § 1651, provides this Court with a separate basis to enjoin Seghers from pursuing the Texas Arbitration, in order to protect this Court's final Judgment on the merits in the Southern District Action.

The All Writs Act empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a); *see also In re Baldwin-United Corp.*, 770 F.2d 328, 336 (2d Cir. 1985); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Doe*, 868 F. Supp. 532, 536 (S.D.N.Y. 1994).  "This provision permits a district court to enjoin actions … where necessary to prevent relitigation of an existing federal judgment … notwithstanding the fact that the parties to the

original action could invoke *res judicata* … against any subsequent suit brought on by the same matters." *In re Baldwin*, 770 F.2d at 335.

Courts have employed the All Writs Act to enjoin arbitration of matters that were previously resolved by federal courts. For example, in *Y & A Group Securities Litigation v. Y & A Group, Inc.*, 38 F.3d 380 (8th Cir. 1994), the district court had entered a final judgment against Y & A in a class action lawsuit. When a member of the class subsequently commenced an arbitration against Dean Witter, the district court granted a preliminary injunction to enjoin the arbitration. *Id.* at 381. The Eighth Circuit affirmed the injunction, holding that: "courts have the power to defend their judgments as *res judicata*, including the power to enjoin or stay subsequent arbitrations." *Id.* at 382. "[N]o other forum provides an adequate substitute for a court's action in protection of its own judgment." *Id.*

The Court should therefore enjoin Seghers from pursuing the Texas Arbitration in order to protect this Court's Judgment in the Southern District Action.

## CONCLUSION

For all the foregoing reasons, Morgan Stanley respectfully requests that this Court issue an Order (i) granting Morgan Stanley's application for a preliminary injunction enjoining Seghers from continuing the Texas Arbitration; and (ii) granting any other such further relief the Court deems just and proper.

Dated: New York, New York
      July 28, 2010

Respectfully submitted

KELLEY DRYE & WARREN LLP

By: _____
    John M. Callagy
    David Zalman
    Wook Kim
    101 Park Avenue
    New York, NY  10178
    (212) 808-7800
    (212) 808-7897

*Attorneys for Plaintiff*
*Morgan Stanley & Co. Incorporated*