UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MORGAN STANLEY & CO.
INCORPORATED,

Plaintiff,

-against-

CONRAD P. SEGHERS,

Defendant.

Civ. Action No.: 10 CV 5378 (DLC)(JCF)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTIONS TO DISMISS AND TO STAY

John M. Callagy
David Zalman
Wook Kim
KELLEY DRYE & WARREN LLP
101 Park Avenue,
New York, New York 10178

Ph. (212) 808-7800
Fax: (212) 808-7897

*Attorneys for Plaintiff*
*Morgan Stanley & Co. Incorporated*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ................................4

ARGUMENT ........................................................................................................9

POINT I.     THIS COURT HAS PERSONAL JURISDICTION OVER MR. SEGHERS ...................................................................................9

    A.    Relevant Standards .................................................................9

    B.    Mr. Seghers Is Subject To Personal Jurisdiction ..................10

        1.    Mr. Seghers Transacted Business In New York By, Among Other Things, Filing The Southern District Action ............................10

        2.    Morgan Stanley's Claims Are Substantially Related To Mr. Seghers' Transaction of Business In New York .......................12

        3.    Jurisdiction Over Mr. Seghers Comports With Due Process ...................12

POINT II.    THIS COURT SHOULD DENY MR. SEGHERS' REQUEST FOR A STAY ...............................................................................................15

CONCLUSION ....................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*AIG Fin. Prods. Corp.  v. Pub. Util. Dist. No.1 of Snohomish County, Washington*, 675 F. Supp. 2d 354 (S.D.N.Y. 2009) .............................................. 11, 12

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779 (2d Cir.1999) ................................................................................................................ 10

*Best Van Lines v. Walker*, 490 F.3d 239 (2d Cir.2007) ........................................ 10

*Boehner v. Heise*, 410 F. Supp. 2d 228 (S.D.N.Y. 2006) .................................... 12, 13, 14

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985) .......................................... 13, 14

*Central Sports Army Club v. Arena Assocs., Inc.*, 952 F. Supp. 181 (S.D.N.Y. 1997) ......................................................................................................................... 15

*Chloe v. Queen Bee of Beverly Hills, LLC*, __ F.3d __, 2010 WL 3035495 (2d Cir. Aug. 5, 2010) ......................................................................................... 9, 10, 11

*CutCo Indus., Inc. v. Naughton*, 806 F.2d 361 (2d Cir. 1986) ............................. 9

*Deutsche Bank Sec., Inc. v. Montana Bd. of Inv.*, 797 N.Y.S.2d 439 (1st Dep't 2005) ......................................................................................................................... 9

*Elman v. Belson*, 302 N.Y.S.2d 961 (N.Y. App. Div. 1969) ................................ 11

*Foremost Guar. Corp. v. Pub. Equities Corp.*, No. 86 Civ. 6421 (CSH), 1988 WL 125667 (S.D.N.Y. Nov. 10, 1988) ...................................................................... 10

*Hanson v. Denckla*, 357 U.S. 235 (1958) ............................................................ 13

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55 (2d Cir. 1985) ................. 9

*International Shoe v. Washington*, 326 U.S. 310 (1945) ....................................... 12

*Kamakazi Music Corp. v. Robbins Music Corp.*, 534 F. Supp. 69 (S.D.N.Y. 1982) ........ 16

*Katz v. Feinberg*, No. 99 Civ. 11705 (CSH), 2001 WL 1132018 (S.D.N.Y. Sept. 24, 2001) ................................................................................................................ 15

*Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 522 N.E.2d 40 (N.Y.1988) ................. 10

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ........................................................ 15

*Manhattan Life Ins. Co. v. A.J. Stratton Syndicate*, 731 F. Supp. 587 (S.D.N.Y.1990) ..................................................................................................... 10

*Matter of Sayeh R.*, 91 N.Y.2d 306 (1997) ..................................................................11

*McGowan v. Smith*, 437 N.Y.S.2d 643 (N.Y. 1981) .....................................................12

*Metropolitan Life Ins. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ...........12, 14

*National Cathode Corp. v. Mexus Co.*, 855 F. Supp. 644 (S.D.N.Y. 1994) .......................9

*Overmeyer v. Eliot Realty*, 371 N.Y.S.2d 246 (N.Y. Sup. Ct. 1975) ...............................11

*PDK Labs., Inc. v. Friedlander*, 103 F.3d 1105 (2d Cir.1997) ......................................12

*Penguin Group (USA) Inc. v. Am. Buddha*, 609 F.3d 30 (2d Cir. 2010) ...........................9

*Scholastic, Inc. v. Stouffer*, No. 99 Civ. 11480 (AGS), 2000 WL. 1154252
   (S.D.N.Y. Aug. 14, 2000) ..........................................................................................10

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)...................................12

## STATUTES

28 U.S.C. § 1391(a)(2) ....................................................................................................15

28 U.S.C. § 1404(a).........................................................................................................15

N.Y. C.P.L.R. §302(a)(1) .......................................................................................2, 10, 12

Plaintiff Morgan Stanley & Co. Incorporated ("Plaintiff" or "Morgan Stanley"), as successor in interest to Morgan Stanley DW, Inc., respectfully submits this memorandum of law in opposition to the motions of Defendant Conrad P. Seghers: (1) to dismiss on the grounds that the Court lacks in personam jurisdiction over him [Docket No. 16] (the "Motion to Dismiss"), and (2) to stay this action pending resolution of an arbitration that Mr. Seghers commenced before the Financial Industry Regulatory Authority ("FINRA") that would be heard in Texas (the "Texas Arbitration") [Docket No. 15] (the "Motion to Stay") (collectively, "Motions"). For each of the reasons set forth herein, Mr. Seghers' Motions should be denied in their entirety.

## PRELIMINARY STATEMENT

Mr. Seghers' Motion to Dismiss and Motion to Stay are nothing more than a transparent attempt at continuing to re-litigate claims in the Texas Arbitration that are virtually identical to, and based on the same factual allegations, as the claims that Judge Lynch and Justice Moskowitz previously dismissed as time-barred. Although Mr. Seghers has had more than a fair and ample opportunity to litigate his claims against Morgan Stanley, he continues his quest. By this action, Morgan Stanley seeks to bring Mr. Seghers' litigious conduct to an end.

Mr. Seghers' Motion to Dismiss for lack of personal jurisdiction should be denied because it ignores his own purposeful activities in New York that form the basis upon which the Court has jurisdiction over him. This Court may exercise jurisdiction over Mr. Seghers so long as (i) the requirements of New York's long-arm statute, section 302 of the New York Civil Practice Law ("CPLR"), are met; and (ii) the exercise of jurisdiction comports with the Due Process Clause of the United States Constitution, *i.e.*, Mr. Seghers has sufficient minimum contacts with New York such that maintaining the suit does not offend traditional notions of fair play and substantial justice.

Under CPLR § 302(a)(1), the Court may exercise jurisdiction over a non-resident defendant if the defendant "transacts any business" in New York, and the claims asserted arise from that transaction. The Court, therefore, has jurisdiction over Mr. Seghers because he "transacted business" in New York by filing an action in this Court in 2006 (the "Southern District Action"), and subsequently litigating that case for almost one year. In addition, although Mr. Seghers claims to have no relevant contacts with New York, he admits that he visited New York on at least two occasions to meet with several employees of Morgan Stanley, and made several telephone calls to New York directly related to the claims raised in the Southern District Action and the Texas Arbitration.

Further, Morgan Stanley's claims in this action arise from, and are integrally related to, Mr. Seghers' activities in New York. Indeed, Morgan Stanley's Complaint seeks to enjoin Mr. Seghers from pursuing the Texas Arbitration on the grounds that, by filing and litigating the Southern District Action in New York, Mr. Seghers waived any alleged right to arbitrate. Also, the Southern District Action resulted in Judge Lynch's dismissal order and entry of final judgment, which Morgan Stanley relies upon to support its claim that the doctrine of *res judicata* bars Mr. Seghers from pursuing the Texas Arbitration.

Exercising jurisdiction over Mr. Seghers also comports with due process because Mr. Seghers has purposefully availed himself of the privileges of conducting activities in New York by affirmatively seeking relief against Morgan Stanley in a federal court located in New York. Thus, exercising jurisdiction over Mr. Seghers would not offend traditional notions of fair play and substantial justice. Mr. Seghers' contention that defending a lawsuit here would be overly burdensome, is belied by his prior pursuit of the Southern District Action in 2006. Further, this Court has a strong interest in promoting the finality of its judgments, and in

protecting New York citizens from having to re-litigate claims that have been previously adjudicated. Likewise, Morgan Stanley has a strong interest in obtaining convenient and effective relief by litigating in New York, and judicial economy would be best served by allowing this action -- which arises directly from a prior judgment of this Court -- to be adjudicated here. Finally, the policies underpinning the existence of statutes of limitations, which provides parties repose after a period of time from litigation, and the finality of litigation provided to parties by the doctrine of *res judicata* strongly weigh in favor of allowing this Court to adjudicate Morgan Stanley's claims.

Mr. Seghers' Motion to Stay should also be denied because he has not, and cannot, demonstrate any hardship or undue prejudice if this action proceeds. Indeed, Mr. Seghers has no legitimate interest in re-litigating exactly the same claims in the Texas Arbitration that this Court previously dismissed. On the other hand, Morgan Stanley will suffer irreparable injury if this action is stayed pending completion of the Texas Arbitration as it would be forced to expend time and resources arbitrating claims that are not arbitrable, and for which it would not be able to recover its attorneys fees or other damages in connection with defending against Mr. Seghers repetitive claims in the Texas Arbitration. Morgan Stanley would also be deprived of its right to rely on the finality of the Judgment entered in the Southern District Action based on Judge Lynch's dismissal order. Staying this action would also not serve any legitimate public interest, as it would permit Mr. Seghers to re-litigate claims that were already adjudicated in this Court. Finally, there is no legitimate reason to stay this action pending resolution of the Texas Arbitration because FINRA has already placed the Texas Arbitration on its inactive docket.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

In his Statement of Claim in the Texas Arbitration, Mr. Seghers alleges that Morgan Stanley made certain "errors" with respect to option trades in certain accounts at Morgan Stanley held by certain hedge funds and related companies that Mr. Seghers founded and previously managed. (Compl. ¶ 9.) [Docket No.1].  Mr. Seghers asserts that as a result of the alleged errors, the hedge funds transferred all assets from their accounts at Morgan Stanley in July 2001.  (*Id.* ¶ 10.)  Mr. Seghers asserts two causes of action in the Texas Arbitration: (1) fraud, and (2) breach of contract based on the brokerage agreements between Morgan Stanley and the hedge funds, of which Mr. Seghers claims he was a third-party beneficiary.  (*Id.* ¶ 33.)

The Texas Arbitration is not the first proceeding in which Mr. Seghers asserted claims against Morgan Stanley based on the same allegations.  Since 2004, Mr. Seghers and his hedge funds have filed claims with various courts and arbitration tribunals based on the same factual background and asserting the same claims that Mr. Seghers now seeks to arbitrate in the Texas Arbitration.  (*Compare* Texas Arbitration Statement of Claim at ¶¶ 2-4, 17-20, 44-92, 97-101 [Docket No. 6-1], *with* Southern District Action Amended Complaint in at ¶¶ 1-4, 17-66 [Docket No. 6-2] *and* IHO Arbitration Statement of Claim at ¶¶1-3, 15-17, 19-60, 64-67 [Docket No. 6-11].)

For example, in June 2006, Mr. Seghers filed a Complaint in this Court asserting fraud claims that were largely identical, word-for-word, to Mr. Seghers' allegations in the Texas Arbitration.  (*See* Compl. ¶ 19.)  Mr. Seghers' complaint asserted three causes of action: two claims for fraud, and one claim for breach of contract based on the brokerage agreements between Morgan Stanley and the hedge funds Mr. Seghers controlled, of which Seghers alleged he was a third-party beneficiary.  (*Id.*)  Mr. Seghers later filed an Amended Complaint, in which

he voluntarily withdrew the breach of contract claim, and only asserted two causes of action:  (i) fraud, and (ii) "destruction of Seghers' business, name and reputation."  (*Id.*)

Seghers' Amended Complaint in the Southern District Action alleged numerous contacts with New York.  For example, Mr. Seghers alleged that he had numerous telephone calls with Morgan Stanley employees in New York regarding the accounts his Hedge Funds maintained, and that in September 1999 he traveled here to meet with personnel from Morgan Stanley's Prime Brokerage Division.  (Southern District Action Amended Compl. ¶ 24.) [Docket No. 6-2].  Mr. Seghers also alleged that in September 1999 he met with personnel from Morgan Stanley's Compliance Department regarding regulatory compliance.  (*Id.* ¶ 25.)  In May 2001, Mr. Seghers again traveled to New York to meet with Morgan Stanley's Prime Brokerage Department relating to his claims.  (*Id.* ¶ 36.)

On May 10, 2007, United States District Court Judge Gerard Lynch issued an Opinion and Order dismissing Mr. Seghers' claims as time-barred.  (Compl. ¶ 21.)  Judge Lynch ruled that under New York's borrowing statute, Texas's four-year statute of limitations applied to Mr. Seghers' fraud claims.  (*Id.* ¶¶ 22-23.)  Relying on Mr. Seghers' own allegations, Judge Lynch found, *inter alia*, that Mr. Seghers had actual knowledge of Morgan Stanley's alleged conduct by August 1, 2001, when Mr. Seghers sent a letter to Morgan Stanley seeking $35 million in damages.  (*Id.* ¶ 24.)  Judge Lynch found that the fraud claims "accrued no later than August 1, 2001, and expired, at the latest on August 1, 2005," yet Mr. Seghers "did not commence [the Southern District Action] until June 15, 2006, more than four years after his fraud claims accrued ..."  (*Id.*)  Judge Lynch, therefore, dismissed Mr. Seghers' fraud claims as time-barred.  (*Id.* ¶ 26.)  Judge Lynch also dismissed Seghers' second cause of action for "destruction of business, name and reputation," ruling the claim was an unrecognized tort claim

that should be analyzed as a defamation claim that "must be dismissed as time-barred, since the allegedly defamatory remarks were made between 2001-2003, well over one year before the initiation of plaintiff's suit." (*Id.* ¶ 27.) On May 11, 2007, the Clerk of this Court entered a final Judgment against Mr. Seghers dismissing the Amended Complaint in its entirety. (*Id.* ¶ 28) Seghers, who was represented by counsel in the Southern District Action, did not appeal the Judgment. (*Id.* ¶ 29.)

One month later, in June 2007, in a plain attempt to circumvent Judge Lynch's order dismissing his claims, Mr. Seghers filed an arbitration (the "IHO Arbitration") with the National Association of Securities Dealers ("NASD"), purportedly on behalf of Integral Hedging Offshore, Ltd ("IHO"). (Compl. ¶ 30.) Mr. Seghers asserted claims for fraud and breach of contract based on the same factual allegations as the claims already dismissed by Judge Lynch. Morgan Stanley filed a Petition in the Supreme Court of the State of New York to stay and dismiss the IHO Arbitration. (*Id.*) By Order dated October 9, 2007, New York State Supreme Court Justice Karla Moskowitz granted Morgan Stanley's Petition, and thereafter Judgment was entered that "the IHO Arbitration is barred by the applicable statute of limitations and is, therefore, permanent stayed and dismissed." (*Id.* ¶ 32.) The Clerk of the Court entered a Judgment on October 19, 2007 "that the IHO Arbitration is barred by the applicable statute of limitations and is, therefore, permanently stayed and dismissed." (*Id.*)

Undeterred by these final judgments, on or about April 29, 2010, Mr. Seghers commenced the Texas Arbitration, seeking to arbitrate the same exact claims that Judge Lynch and Justice Moskowitz previously dismissed as time-barred. Mr. Seghers' claims in the Texas Arbitration are based on the same alleged facts as the claims made in the Southern District Action and the IHO Arbitration, which claims were dismissed by both Judge Lynch and Justice

Moskowitz as time-barred. (*Compare* Texas Arbitration Statement of Claim at ¶¶ 2-4, 17-20, 44-92, 97-101 [Docket No. 6-1], *with* Southern District Action Amended Complaint at ¶¶ 1-4, 17-66 [Docket No. 6-2] *and* IHO Arbitration Statement of Claim at ¶¶ 1-3, 15-17, 19-60, 64-67 [Docket No. 6-11].) Mr. Seghers reasserts exactly the same breach of contract claim that he asserted in his original Complaint in the Southern District Action, and that he voluntarily withdrew when he filed the Amended Complaint in that proceeding. (*Compare* Texas Arbitration Statement of Claim at ¶¶ 97-100 [Docket No. 6-1], *with* Southern District Action Original Complaint at ¶¶ 66-69 [Docket No. 6-9].) Mr. Seghers also seeks the same damages that he sought in the Southern District Action: $35 million for alleged losses to the Hedge Funds, and an additional $30 million from the alleged destruction of his business and reputation. (*Compare* Texas Arbitration Statement of Claim at ¶ 95 [Docket No. 6-1], *with* Southern District Action Amended Complaint at ¶ 76 [Docket No. 6-2].) In addition, Mr. Seghers repeats the same allegations that he made in the Southern District Action regarding his numerous phone calls and visits to New York to meet with Morgan Stanley representatives regarding his hedge funds' accounts. (Texas Arbitration Statement of Claim, ¶¶ 46- 47, 63 [Docket No. 6-1].)

Morgan Stanley's Answer in the Texas Arbitration was due on July 16, 2010. Accordingly, on July 14, 2010, Morgan Stanley filed the Complaint in this action to permanently bar Mr. Seghers from pursuing the Texas Arbitration. [Docket No. 1.] Morgan Stanley's Complaint seeks declarations that: (1) by filing the Southern District Action, Mr. Seghers waived any alleged right to arbitrate the claims asserted in the Texas Arbitration, and, (2) Judge Lynch's Order dismissing the Southern District Action bars Mr. Seghers' claims in the Texas Arbitration under the doctrine of *res judicata*.

On July 15, 2010, Morgan Stanley advised FINRA that it had filed its Complaint in this action, and requested that FINRA stay the Texas Arbitration pending this Court's decision on Morgan Stanley's then anticipated motion for preliminary injunction [Docket No. 19-1], which Morgan Stanley later filed on July 29, 2010 ("Preliminary Injunction Motion") [*See* Docket Nos. 5-8]. By letter dated August 4, 2010, however, FINRA advised Morgan Stanley that it had preliminarily denied Morgan Stanley's application to stay the Texas Arbitration. [Docket No. 19-15].

On August 6, 2010, in light of FINRA's denial of Morgan Stanley's application, Morgan Stanley filed an emergency application in this Court to temporarily enjoin Mr. Seghers from pursuing the Texas Arbitration pending the Court's determination of Morgan Stanley's previously filed Preliminary Injunction Motion. [Docket No. 19]. On August 10, 2010, after a full hearing, this Court granted Morgan Stanley's application and issued a temporary restraining order enjoining Seghers from pursuing the Texas Arbitration. [Docket No. 10].

On August 6, 2010, prior to the hearing, Mr. Seghers served the Motions to Dismiss and to Stay this action. In the Motion to Dismiss, Mr. Seghers conclusorily asserts "that this Court does not have personal jurisdiction over" him. [Docket No. 16 at 1.] Although Mr. Seghers submits an affidavit stating that he lacks certain contacts with New York [Docket No. 17 at 4-5], Mr. Seghers omits that: (1) he previously filed and litigated the Southern District Action in New York, (2) this Court previously issued a final judgment dismissing the same exact claims that Mr. Seghers seeks to arbitrate in Texas, and (3) he engaged in numerous phone calls and visits to New York to meet with Morgan Stanley representatives regarding his hedge funds' accounts. In the Motion to Stay, Mr. Seghers requests that this Court stay this action pending resolution of the Texas Arbitration. [Docket No. 15].

On August 13, 2010, FINRA placed the Texas Arbitration on its "inactive docket" pending a decision on Morgan Stanley's previously filed Preliminary Injunction Motion in this action.  *See* Exhibit 1 to the Declaration of David Zalman, dated August 19, 2010.

## ARGUMENT

## POINT I.

## THIS COURT HAS PERSONAL JURISDICTION OVER MR. SEGHERS

### A.    Relevant Standards

In this diversity action, personal jurisdiction over Mr. Seghers is determined in accordance with the law of the state in which this Court sits, *i.e.*, New York law.  *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985).  Morgan Stanley bears the burden of demonstrating that this Court has personal jurisdiction over Mr. Seghers.  *See Penguin Group (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010).  To establish personal jurisdiction over Mr. Seghers under New York law, Morgan Stanley need only show that Mr. Seghers' conduct satisfies New York's long-arm statute, §302 of the New York Civil Practice Law and Rules, and that the exercise of jurisdiction over Seghers comports with the Due Process Clause of the United States Constitution.  *See Chloe v. Queen Bee of Beverly Hills, LLC*, __ F.3d __, No. 09-3361-CV, 2010 WL 3035495, at *8 (2d Cir. Aug. 5, 2010); *Deutsche Bank Sec., Inc. v. Montana Bd. of Inv.*, 797 N.Y.S.2d 439, 442 (1st Dep't 2005).

In order to avoid dismissal based on lack of jurisdiction, Morgan Stanley "need only make a prima facie showing that jurisdiction exists." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).  In reviewing the Motion to Dismiss, the Court construes all facts in a light favorable to Morgan Stanley, and should resolve all doubts in Morgan Stanley's favor. *See Hoffritz*, 763 F.2d at 57; *National Cathode Corp. v. Mexus Co.*, 855 F. Supp. 644, 647 (S.D.N.Y. 1994).

9

**B.**     **Mr. Seghers Is Subject To Personal Jurisdiction**

**1.**     **Mr. Seghers Transacted Business In New York By, Among Other Things, Filing The Southern District Action**

Pursuant to CPLR §302(a)(1), "a court may exercise personal jurisdiction over any non-domiciliary… who in person or through an agent… transacts any business within the state." N.Y. C.P.L.R. §302(a)(1).   Thus, jurisdiction is established under section 302(a)(1) where (i) the defendant has transacted business within the state, and (2) the claim arises out of that activity. *See Best Van Lines v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir.1999).

One "transacts business" under section 302(a)(1) by engaging in "purposeful activity - 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Best Van Lines*, 490 F.3d at 246 (quotation omitted).   Section 302(a)(1) "requires only a minimal quantity of activity, provided that it is of the right nature and quality." *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate*, 731 F. Supp. 587, 592 (S.D.N.Y.1990) (citations and internal quotations omitted).   In fact, "section 302 is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even if the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Chloe*, 2010 WL 3035495, at *9 (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (N.Y. 1988); *Bank Brussels*, 171 F.3d at 787; *Foremost Gura. Corp. v. Pub. Equities Corp.*, No. 86 Civ. 6421 (CSH), 1988 WL 125667, at *3 (S.D.N.Y. Nov. 10, 1988).   Furthermore, "a 'transaction' of business under [section 302(a)(1)] does not require an exchange of money, goods or services, or the formation of a contract." *Scholastic, Inc. v. Stouffer*, No. 99 Civ. 11480 (AGS), 2000 WL 1154252, at *4

(S.D.N.Y. Aug. 14, 2000).  *See also Elman v. Belson*, 302 N.Y.S.2d 961, 963-64 (N.Y. App. Div. 1969).  In addition, "a defendant need not be physically present in New York to transact business" here.  *Chloe*, 2010 WL 3035495, at *8 (citation omitted).

Mr. Seghers' filing of the Southern District Action in June 2006, and subsequent litigation for almost one year, constitutes "transaction of business" that subjects Seghers to personal jurisdiction in this action.  The New York Court of Appeals has found that "[u]se of the New York courts is a traditional justification for the exercise of personal jurisdiction over a nonresident."  *In the Matter of Sayeh R.*, 91 N.Y.2d 306, 319 (1997) (citations omitted).  *See also Elman*, 302 N.Y.S.2d at 963-64 (holding that an Illinois resident "transacted business" in New York by commencing an action in New York to enforce an Illinois judgment, even though he "did not physically visit New York or personally enter into negotiations when the plaintiffs were retained"); *Overmeyer v. Eliot Realty*, 371 N.Y.S.2d 246, 253 (N.Y. Sup. Ct. 1975) ("it is clear that defendant engaged in purposeful activity in this state by seeking enforcement of the Texas judgment and the Court holds such activity to be transaction of business here, which supports acquisition of In personam jurisdiction.").

In addition, although Mr. Seghers claims to have no relevant contacts with New York, he alleged both in the Southern District Action and in the Texas Arbitration that he visited New York on at least two occasions to meet with employees in Morgan Stanley's Prime Brokerage and Compliance Departments, and that he made several telephone calls to New York directly related to his claims.  These contacts also constitute "transaction of business" in New York that subjects Mr. Seghers to personal jurisdiction here.  *See AIG Fin. Prods. Corp. v. Pub. Util. Dist. No.1 of Snohomish County, Washington*, 675 F. Supp. 2d 354, 361 (S.D.N.Y. 2009).

**2.      Morgan Stanley's Claims Are Substantially Related To Mr. Seghers'
         Transaction of Business In New York**

In order to subject Mr. Seghers to personal jurisdiction under CPLR § 302(a)(1),

there must be "an articulable nexus, or substantial relationship, between the claim[s] asserted and

the actions that occurred in New York." *AIG Fin. Prods. Corp.*, 675 F. Supp. 2d at 365; *Boehner

v. Heise*, 410 F. Supp. 2d 228, 236 (S.D.N.Y. 2006) (citing *McGowan v. Smith*, 437 N.Y.2d 268,

272 (N.Y. 1981)).

There is plainly an "articulable nexus" and "substantial relationship" between the

Southern District Action that Mr. Seghers filed and litigated in New York, and Morgan Stanley's

claims in this action.  Indeed, Morgan Stanley's Complaint seeks to enjoin Mr. Seghers from

pursuing the Texas Arbitration on the grounds that, by filing and litigating the Southern District

Action, Mr. Seghers waived any alleged right to arbitrate.  Also, the Southern District Action

that Mr. Seghers filed resulted in Judge Lynch's dismissal order and entry of final judgment,

which Morgan Stanley relies upon to support its claim that the doctrine of *res judicata* bars Mr.

Seghers from pursuing the Texas Arbitration.

**3.      Jurisdiction Over Mr. Seghers Comports With Due Process**

Exercising personal jurisdiction over Mr. Seghers comports with due process,

which "requires that a defendant have enough minimum contacts with the forum state so that the

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

*PDK Labs., Inc. v. Friedlander*, 103 F.3d 1105, 1110 (2d Cir.1997) (quoting *International Shoe

v. Washington*, 326 U.S. 310, 316 (1945)).   The due process test has "two related concepts: the

'minimum contacts' inquiry and the 'reasonableness' inquiry." *Metropolitan Life Ins. v.

Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).

The minimum contacts inquiry focuses on whether a non-resident defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Minimum contacts will be found where, as here, "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Mr. Seghers purposefully availed himself of the privilege of conducting activities in New York. Mr. Seghers filed the Southern District Action in New York, and affirmatively sought relief from this Court. After litigating the Southern District Action for almost a year, Judge Lynch dismissed Mr. Seghers' claims as time-barred, and final judgment was entered against Mr. Seghers. Notwithstanding this final judgment, Mr. Seghers commenced the Texas Arbitration and seeks to re-litigate the same claims that Judge Lynch previously dismissed. Thus, Mr. Seghers should have expected that Morgan Stanley would commence this action in New York based on Mr. Seghers' prior conduct here, and to enforce Judge Lynch's dismissal order and the resulting final judgment. The Court's exercise of jurisdiction over Mr. Seghers therefore comports with traditional notions of fair play and substantial justice.

"Beyond minimum contacts, Courts consider additional factors to determine whether the exercise of personal jurisdiction would comport with 'fair play and substantial justice.'" *Boehner*, 410 F. Supp. 2d at 239 (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 476-77 (1985)). "These factors include: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering substantive social

policies." *Id.* at 239 (citing *Burger King*, 471 U.S. at 477). Where, as here, Morgan Stanley has made a sufficient showing of Mr. Seghers' minimum contacts with New York, Mr. Seghers "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (citing *Burger King*, 471 U.S. at 477).

Consideration of these factors demonstrates that exercising jurisdiction over Mr. Seghers is reasonable. First, Mr. Seghers' argument that defending a lawsuit in New York would be overly burdensome is belied by his previous pursuit of the Southern District Action. Moreover, "[w]hile there may be difficulties associated with requiring [Seghers] who resides in [Texas], to defend suit in New York, 'the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago.'" *Boehner*, 410 F. Supp. 2d at 239 (quoting *Metropolitan Life Ins.*, 84 F.3d at 564). Indeed, Mr. Seghers had no trouble participating in a hearing on Morgan Stanley's application for a temporary restraining order via telephone.

New York also has a strong interest in promoting the finality of judgments entered in courts sitting within its borders, and in protecting New York citizens from having to re-litigate claims that were already adjudicated. Morgan Stanley also has a strong interest in obtaining convenient and effective relief by litigating in New York where Morgan Stanley maintains its principal place of business. Also, judicial economy would be best served by allowing this action -- which arises directly from a prior judgment of this Court -- to be adjudicated here. Finally, the policies underpinning the existence of statutes of limitations, which provides parties repose after a period of time from litigation, and the finality of litigation provided to parties by the doctrine of *res judicata* strongly weigh in favor of allowing this Court

to adjudicate such issues.  Accordingly, an exercise of jurisdiction over Seghers in this action is reasonable.[1]

## POINT II.

## THIS COURT SHOULD DENY MR. SEGHERS' REQUEST FOR A STAY

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).  Where a party moves to stay a pending proceeding, the court may weigh the following competing interests:

> the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the potential simplification of issues, proof, and questions of law which could be expected to result from a stay.

*Katz v. Feinberg*, No. 99 Civ. 11705 (CSH), 2001 WL 1132018, at * 3 (S.D.N.Y. Sept. 24, 2001).  Mr. Seghers as "[t]he party seeking a stay 'must make out a clear case of hardship or

---

[1]     Although not expressly stated in the Motions, Mr. Seghers also appears to move to dismiss for improper venue.  *See* Motion to Stay at 2 [Docket No. 15] ("this case was filed in the wrong venue.  Seghers files this Motion to Stay this case while the actual matter is arbitrated through FINRA, the initial and actual venue for this dispute."); Motion to Dismiss at 2 [Docket No. 16] (same).  However, Morgan Stanley's choice of venue was unquestionably proper because "a substantial part of the events or omissions giving rise" to Morgan Stanley's claims, *i.e.*, Mr. Seghers' filing of the Southern District Action, and Judge Lynch's dismissal order and resulting final judgment, occurred in this judicial district.  *See* 28 U.S.C. § 1391(a)(2).

Similarly, to the extent Mr. Seghers' Motions may be interpreted as a motion to transfer pursuant to 28 U.S.C. § 1404(a), they should be denied.  "The purpose of section 1404 is to prevent waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Central Sports Army Club v. Arena Assocs., Inc.*, 952 F. Supp. 181, 189 (S.D.N.Y. 1997).  Transferring this action to a district court in Texas would not serve the purposes underlying section 1404.  If anything, a transfer would be a waste of time energy and money for both parties as this Court is already familiar with Morgan Stanley's claims in this action.  Moreover, Morgan Stanley's claims in this action are based on a final judgment of this Court.

inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.'" *Id.*, at *2 (quoting *Landis*, 299 U.S. at 255). *See also Kamakazi Music Corp. v. Robbins Music Corp.*, 534 F. Supp. 69, 73 (S.D.N.Y. 1982) (motion for stay of actions pending appeal denied).

Mr. Seghers' Motion to Stay should be denied because he has not, and cannot, demonstrate any hardship or undue prejudice if this action proceeds. Indeed, Mr. Seghers has no legitimate interest in re-litigating exactly the same claims in the Texas Arbitration that this Court previously dismissed. In contrast, Morgan Stanley will suffer irreparable injury if this action is stayed pending completion of the Texas Arbitration. As set forth in its preliminary injunction papers, unless this action proceeds, Morgan Stanley would be forced to expend time and resources arbitrating claims that are not arbitrable, and for which it would not be able to recover its attorneys fees or other damages in connection with defending against Mr. Seghers' repetitive claims in the Texas Arbitration. Morgan Stanley would also be deprived of its right to rely on the finality of the Judgment entered in the Southern District Action based on Judge Lynch's dismissal order.

Staying this action would also not result in the orderly course of justice, or serve any legitimate public interest, as it would permit Mr. Seghers to re-litigate claims that were already adjudicated in this Court. The public generally has a significant interest in the finality of litigation, and if Mr. Seghers is permitted to continue the Texas Arbitration, the policies of repose and finality embodied in statutes of limitations and the doctrine of *res judicata* would be complete vitiated. Likewise, the judicial system and arbitration system could not function properly if burdened by repetitive actions. Finally, there is no legitimate reason to stay this action pending resolution of the Texas Arbitration because FINRA has already placed the Texas

Arbitration on its inactive docket pending a determination by this Court on Morgan Stanley's

Preliminary Injunction Motion.  Accordingly, Mr. Seghers' Motion to Stay should be denied.

## CONCLUSION

For all the foregoing reasons, Morgan Stanley respectfully requests that this Court

issue an order denying Mr. Seghers' Motions.

Dated: New York, New York
August 19, 2010

Respectfully submitted

KELLEY DRYE & WARREN LLP

By: _____

John M. Callagy
David Zalman
Wook Kim
101 Park Avenue
New York, NY  10178
(212) 808-7800
(212) 808-7897

*Attorneys for Plaintiff
Morgan Stanley & Co. Incorporated*