```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
MORGAN STANLEY & CO, INC.,              :    10 Civ. 5378 (DLC)
                                        :
                 Plaintiff,             :       OPINION
            -v-                         :      AND ORDER
                                        :
CONRAD P. SEGHERS,                      :
                 Defendant.             :
                                        :
----------------------------------------X
```

Appearances:

For the plaintiff:
John M. Callagy
David Zalman
Wook Kim
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178

For the defendant:
Conrad P. Seghers, pro se
12400 Highway 71 West
Suite 350-388
Austin, TX 78738

DENISE COTE, District Judge:

Plaintiff Morgan Stanley & Co., Inc. ("Morgan Stanley") seeks a preliminary injunction enjoining the pro se defendant, Conrad P. Seghers ("Seghers"), from pursuing an arbitration action against Morgan Stanley before the Financial Industry Regulatory Authority ("FINRA") in Texas ("the Texas Arbitration"). For the following reasons, the motion is granted.

I.   FINDINGS OF FACT

Morgan Stanley and Seghers have been fighting this legal battle for approximately nine years.  In 1999, several hedge funds and related entities run by Seghers and his associates opened accounts in Morgan Stanley's Burbank, California branch.  In March 2001, Seghers and his partners accused Morgan Stanley of committing serious errors related to how activity in the funds' accounts was reflected on account statements.  They blamed these errors for large losses in the funds' value.  In July 2001, Seghers transferred all of the assets in the funds' accounts to a different bank and the accounts were closed.  On August 1, 2001, Seghers's attorney wrote Morgan Stanley a letter accusing the bank of making serious errors in handling the accounts and demanding damages of "at least $35 million."[1]

   A.   Texas State Court Actions

In December 2001, a major investor in Seghers's hedge funds sued him, his business partners, and the funds in Texas state court for fraud.  In August 2002, the Texas court appointed a receiver over two of the funds, which gave the receiver legal authority to maintain suit on behalf of those funds.  Several of the funds, including those in receivership, sued Morgan Stanley in Texas state court in mid-2002, and the dispute was compelled

---

[1] For a more thorough exposition of these facts, see Seghers v. Morgan Stanley DW, Inc., No. 06 Civ. 4639(GEL), 2007 WL 1404434 (S.D.N.Y. May 10, 2007) ("the 2006 SDNY Action").

to arbitration before the National Association of Securities Dealers ("NASD"). Morgan Stanley and the funds reached a settlement agreement in April 2006.[2]

B.   2006 SDNY Action

On June 16, 2006, Seghers filed the 2006 SDNY Action against Morgan Stanley.[3] In his second amended complaint, he alleged one count of fraud against Morgan Stanley for knowingly and falsely representing that all trades in the funds' accounts were properly placed in accordance with Seghers's instructions; that errors in the account statements were merely errors in the statements, and not in the underlying transactions; and that the value of the funds' assets as reported by Morgan Stanley was correct. Seghers sought $35 million in consequential damages from the fraud. The second count in the second amended complaint alleged destruction of Seghers's business, name and

---

[2] The Securities and Exchange Commission ("SEC") initiated an enforcement proceeding against Seghers in 2004. A jury found Seghers liable for securities fraud in 2006. S.E.C. v. Seghers, No. 03 Civ. 1320, 2006 WL 2661138 (N.D. Tex. Sept. 14, 2006), affirmed in part and vacated in part on other grounds by S.E.C. v. Seghers, No. 06-11146, 298 Fed. App'x 319, 2008 WL 4726248 (5th Cir. Oct. 28, 2008).

[3] The basis for subject matter jurisdiction was diversity of citizenship. Seghers is a citizen of Texas. Morgan Stanley is a Delaware corporation with its principal place of business in New York.

reputation, for which he sought damages of $30 million.[4]  Morgan Stanley moved to dismiss the second amended complaint on the ground that, inter alia, Seghers's claims were barred by the statute of limitations.

In an Opinion and Order dated May 10, 2007, the Honorable Gerard E. Lynch granted Morgan Stanley's motion to dismiss, finding that Seghers's claims were time-barred.  The court applied Texas's four-year statute of limitations to the fraud claim.  2006 SDNY Action, 2007 WL 1404434, at *3.  Applying Texas law, the court explained that the four-year period began to run when a plaintiff learned of "a wrongful injury, or of facts that should lead to an investigation."  Id. at *4 (citation omitted).  The court found that Seghers's August 1, 2001 letter to Morgan Stanley demonstrated that he had sufficient knowledge as of that date to cause him to begin investigating his claim against Morgan Stanley.  Id.  Judge Lynch found that Seghers's argument that he had not learned of the specific details of the fraud until 2003 or 2004 was "irrelevant" to the statute of limitations analysis because he did know the general cause of his injury in August 2001.  Id.

---

[4] The original complaint in the 2006 SDNY Action had also alleged breach of the contract between the funds and Morgan Stanley on the theory that Seghers was a third-party beneficiary to those contracts.  After Morgan Stanley moved to dismiss the original complaint, Seghers withdrew the claim instead of opposing the motion with respect to that claim.

4

The court also held that the statute of limitations under Texas law was not tolled because Seghers could not demonstrate that the fraud was either "inherently unknowable" or fraudulently concealed from him.  Id. at *5 (citation omitted).  In fact, Seghers had alleged in his complaint that he had actual knowledge of the fraudulent activity starting in 2001.[5]  Id.

The second count of the complaint, for intentional destruction of Seghers's business, name, and reputation, was also dismissed as time-barred.  The claim was construed as a defamation claim, which is subject to a one-year statute of limitations.  Seghers did not dispute that the alleged defamation had occurred more than one year prior to his filing of the lawsuit.  Id. at *8.  Judgment was entered on May 11, 2007.  Seghers, who was represented by counsel in the 2006 SDNY Action, did not appeal.

    C.    The IHO Arbitration

In June 2007, Integral Hedging Offshore, Ltd. ("IHO"), one of the funds that Seghers founded and whose assets had been traded through the accounts at Morgan Stanley, filed an arbitration action against Morgan Stanley before the NASD.  The statement of claim alleged fraud and breach of contract based on the same facts as the 2006 SDNY Action ("IHO Arbitration").  IHO

---

[5] Moreover, the court determined that even if Seghers's fraud claim was not time-barred, he lacked standing to bring the claim.  2006 SDNY Action, 2007 WL 1404434, at *6 n.5.

5

was represented by the same law firm that represented Seghers in the 2006 SDNY Action and the statement of claim in the IHO Arbitration tracked the complaints in the 2006 SDNY Action closely.  On August 1, 2007, Morgan Stanley successfully petitioned the New York Supreme Court, New York County to permanently stay and dismiss the IHO Arbitration on the ground that IHO's claims were time-barred.  <u>Morgan Stanley DW Inc. v. Integral Hedging Offshore, Ltd.</u>, No. 602605/07 (N.Y. Sup. Ct. Oct. 9, 2007) (unpublished opinion).  Judgment was entered on October 19, 2007.

    D.    The Texas Arbitration

On or about April 28, 2010, Seghers commenced the Texas Arbitration before FINRA, the successor to the NASD.  In his statement of claim in the Texas Arbitration, Seghers alleges two counts of fraud and one count of breach of contract on a third-party beneficiary theory.  The basis of the allegations is the alleged errors Morgan Stanley made in connection with Seghers's hedge funds' accounts at Morgan Stanley.  Specifically, Seghers alleges that Morgan Stanley knowingly and falsely represented that all trades in the accounts were properly placed in accordance with Seghers's instructions; that errors in the account statements were only errors in the statements, and not in the underlying transactions; and that the value of the funds reported by Morgan Stanley was correct -- <u>i.e.</u>, the precise

6

fraud claim Seghers alleged in the 2006 SDNY Action.  A second claim, also styled as a fraud cause of action, alleges that Morgan Stanley ruined Seghers's business and "carried out a systematic campaign to foist its own wrongdoing on Seghers."[6]  The breach of contract claim alleges that Seghers was a third-party beneficiary to the contracts between the funds and Morgan Stanley.  Seghers copied several allegations word-for-word from his complaints in the 2006 SDNY Action and the statement of claim in the IHO Arbitration into the statement of claim in the Texas Arbitration.

    E.   The Present Action

    On July 14, 2010, Morgan Stanley filed the complaint in this action seeking a declaratory judgment that Seghers waived any right to arbitrate his claims by litigating them in an earlier lawsuit and that Seghers's claims in the Texas Arbitration are barred by the doctrine of claim preclusion.  It also seeks an injunction enjoining Seghers from pursuing the Texas Arbitration.  The plaintiff filed the motion for a preliminary injunction on July 29.  The Court issued a Scheduling Order for briefing of the motion and scheduled a conference with the parties for September 15.  On August 4, FINRA denied the plaintiff's application for a stay of the Texas

---

[6] This precise allegation was the basis of the defamation claim dismissed as time-barred in the 2006 SDNY Action.  2006 SDNY Action, 2007 WL 1404434, at *6 n.5.

7

Arbitration.  On August 6, the plaintiff brought an order to show cause and temporary restraining order ("TRO") to enjoin Seghers from going forward with the Texas Arbitration.  The Court scheduled a conference for August 10.  On August 9, the Court's chambers received several documents from Seghers:  a motion for special appearance and plea to the jurisdiction, a motion to stay, a motion to dismiss, an answer, and a response to the plaintiff's order to show cause and TRO.  These pleadings have been filed with the Clerk of Court.[7]

At a conference on the record on August 10, a temporary restraining order was entered enjoining Seghers from pursing the Texas Arbitration pending a decision on the motion for a preliminary injunction.  At the conference, the parties consented to submitting the preliminary injunction motion on the paper record.  On August 13 and in response to the TRO entered

---

[7] The parties consented to briefing all of these motions on the same schedule originally set in the August 2 Scheduling Order, which required Seghers's opposition to the preliminary injunction to be filed by August 20.  When Seghers was asked by the Court at the August 10 conference if he intended to file any opposition beyond the materials he had already submitted to the Court, he indicated that he had not yet decided.  Seghers did not submit any additional materials in opposition to the motion for preliminary injunction or in support of his motions to dismiss and for a stay.  Because Seghers is a pro se defendant, his submissions will be construed liberally.  All of the papers he submitted on August 9 have been considered as Seghers's opposition to the motion for preliminary injunction.  Seghers's motions to dismiss and for a stay are denied in a separate Memorandum Opinion and Order dated today.

on August 10, FINRA placed the Texas Arbitration on its inactive docket.

   II.  CONCLUSIONS OF LAW

      A. Personal Jurisdiction

   Before reaching the merits of the plaintiff's motion for a preliminary injunction, it is necessary to address Seghers's argument that the Court lacks personal jurisdiction over him. "A federal court's jurisdiction over non-resident defendants is governed by the law of the state in which the court sits -- including that state's long-arm statute -- to the extent this law comports with the requirements of due process."  Arar v. Ashcroft, 532 F.3d 157, 173 (2d Cir. 2008), vacated and superseded on other grounds by 585 F.3d 559 (2d Cir. 2009).  "In New York, the question of long-arm personal jurisdiction over an out-of-state defendant is governed by N.Y. C.P.L.R. § 302." Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 35 (2d Cir. 2010).  Section 302 permits a court to exercise personal jurisdiction over an out-of-state party that "transacts any business within the state" if the cause of action arises from that transaction of business.  N.Y. C.P.L.R. § 302(a).  A defendant transacts business in New York if he "engages in purposeful activities or volitional acts through which he avails himself of the privilege of conducting activities within the State, thus invoking the benefits and protections of its laws"

9

and there is a "substantial relationship" between the transaction of business and the claim asserted.  Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 169-70 (2d Cir. 2010) (citation omitted).

If the New York long-arm statute permits personal jurisdiction, a court must still determine whether exercising personal jurisdiction over a defendant comports with the Due Process Clause of the United States Constitution.  "The due process test for personal jurisdiction has two related components: the 'minimum contacts inquiry' and the 'reasonableness' inquiry."  Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996).  Whether a defendant has sufficient contacts with a forum to satisfy the Due Process Clause is measured by the same test as the New York courts use with respect to the long-arm statute: whether the defendant has purposefully availed himself of the "privilege of conducting activities" in New York.  Chloé, 616 F.3d at 169 (citation omitted).

To satisfy the reasonableness inquiry, a plaintiff must demonstrate that "the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." Id. at 173 (citation omitted).

> The Supreme Court has set forth five factors that must be considered when determining the

> reasonableness of a particular exercise of jurisdiction:
> A court must consider [1] the burden on the defendant, [2] the interests of the forum State, and [3] the plaintiff's interest in obtaining relief.  It must also weigh in its determination [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and [5] the shared interest of the several States in furthering fundamental substantive social policies.

Id. (citation omitted).

This Court has personal jurisdiction over Seghers pursuant to N.Y. C.P.L.R. § 302(a).  "Use of the New York courts is a traditional justification for the exercise of personal jurisdiction over a nonresident."  Matter of Sayeh R., 670 N.Y.S.2d 377, 91 N.Y.2d 306, 319 (1997); see also Eli Lilly & Co. v. Gottstein, ___ F.3d ___, No. 07-1107-CV, 2010 WL 3168649, at *6-7 (2d Cir. Aug. 12, 2010); Elman v. Belson, 302 N.Y.S.2d 961, 965 (App. Div. 2d Dep't 1969).  Seghers transacted business in New York when he hired New York counsel, filed the 2006 SDNY Action, and litigated the case in New York to a final judgment.  These actions were volitional acts through which Seghers availed himself of the privileges of conducting activities in New York.  There is a substantial relationship between Seghers's transaction of business in New York and the claims asserted in this action because the 2006 SDNY Action is the basis of the

plaintiff's claim that Seghers waived any right he may have to arbitrate his claims.

Exercising personal jurisdiction over Seghers complies with the requirements of the Due Process Clause.  Seghers has sufficient contacts with New York based on his purposeful commencement of a lawsuit in federal court in New York.  It is reasonable to exercise personal jurisdiction over Seghers because it is fair to require him to litigate a subsequent "round" of litigation in the same forum in which he initiated an earlier suit on the same subject.  Applying the five-factor test, there will be some burden on Seghers if he must travel to New York for trial.  With "the conveniences of modern communication and transportation," however, this burden is far less than it would have been in the past.  Chloé, 616 F.3d at 173 (citation omitted).  The interests of the forum state support exercising personal jurisdiction over Seghers because New York has a strong interest in enforcing the final judgment in the 2006 SDNY Action and preventing arbitration of the same claims in a different forum.  Morgan Stanley's interest also favors exercising jurisdiction because the plaintiff has a strong interest in the finality of the judgment in the 2006 SDNY Action.  Finally, exercising personal jurisdiction over Seghers promotes an efficient resolution of this controversy and furthers the policies of finality and repose.

B. Preliminary Injunction

A district court has the authority to issue a preliminary injunction to enjoin an individual from pursuing a FINRA arbitration. See, e.g., Citigroup Global Markets Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 40 (2d Cir. 2010). To obtain a preliminary injunction, the movant must satisfy a four-part test. Salinger v. Colting, 607 F.3d 68, 79-80 (2d Cir. 2010). First, the plaintiff must demonstrate "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor." Id. at 79 (citation omitted). Second, the plaintiff must demonstrate that "he is likely to suffer irreparable injury in the absence of an injunction." Id. at 79-80 (citation omitted). "Third, a court must consider the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor." Id. at 80. Fourth, "the court must ensure that the public interest would not be disserved" by issuing the preliminary injunction. Id. (citation omitted). See also Metro. Taxicab Bd. of Trade v. City of New York, 615 F.3d 152, 156 (2d Cir. 2010) (describing a three-part test consisting of parts 1, 2 and 4 of the Salinger standard).

Irreparable harm is the "single most important prerequisite" for a preliminary injunction to issue. Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009) (citation omitted). The plaintiff must demonstrate that, without a preliminary injunction, he will suffer an injury that is "neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." Id. (citation omitted). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." Id. (citation omitted). Thus, the "relevant harm is the harm that (a) occurs to the parties' legal interests and (b) cannot be remedied after a final adjudication, whether by damages or a permanent injunction." Salinger, 607 F.3d at 81. A court must not presume that a plaintiff will suffer irreparable harm; it must "actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits." Id. at 80.

    1.   The Merits

Morgan Stanley argues that Seghers should be enjoined from pursuing the Texas Arbitration because he waived any alleged right to arbitrate his claims by filing the 2006 SDNY Action.[8] A

---

[8] Because an injunction should issue based on Seghers's waiver of his right to arbitrate it is unnecessary to reach Morgan

14

party may waive its right to arbitrate by engaging in litigation. The three factors relevant to a waiver determination are "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 229 (2d Cir. 2001). The third factor is the most important. "The key to a waiver analysis is prejudice." Thyssen, Inc. v. Calypso Shipping Corp., S.A., 310 F.3d 102, 105 (2d Cir. 2002).

Seghers waived his right to arbitrate his dispute with Morgan Stanley by filing the 2006 SDNY Action and participating in the motion practice that resulted in a final judgment in that action. The 2006 SDNY Action reflects Seghers's choice to litigate the legal and factual issues that he now seeks to arbitrate in the Texas Arbitration. The SDNY Action proceeded to final judgment and four years have elapsed between the 2006 SDNY Action and the filing of the Texas Arbitration.

Morgan Stanley has demonstrated ample prejudice should this injunction not issue. Morgan Stanley would be substantively prejudiced because Seghers lost the 2006 SDNY Action on the merits and is attempting to re-litigate the same issues in the

---

Stanley's alternative argument that Seghers's claims are barred by the doctrine of claim preclusion.

Texas Arbitration.  The plaintiff also faces prejudice due to excessive cost and delay.  Morgan Stanley has already borne the expense of defending itself against Seghers's allegations in the 2006 SDNY Action.  To require it to expend further resources defending itself against the same charges in the Texas Arbitration would be unjust.  Moreover, for three years, Morgan Stanley has enjoyed the finality of a judgment on the merits in the 2006 SDNY Action.  Seghers's delay of years after an un-appealed final judgment also prejudices Morgan Stanley.

Seghers's arguments that Morgan Stanley is not likely to succeed on the merits are not persuasive.  Liberally construing his opposition, Seghers makes principally three arguments.  First, he argues that he has not waived his right to arbitrate this dispute because, in connection with the 2006 SDNY Action, Morgan Stanley previously agreed to arbitrate the dispute and told him that he was required to arbitrate the dispute.  Even if that is the case,[9] it is irrelevant.  Waiver depends on Seghers's actions, not Morgan Stanley's.  Seghers's decision to litigate is the ground for his waiver.

Second, Seghers argues that the judgment in the 2006 SDNY Action does not prevent him from bringing his claims in the Texas Arbitration because he now has access to secret evidence

---

[9] Morgan Stanley did not file a motion to compel arbitration in the 2006 SDNY Action.

16

that Morgan Stanley hid from him in the prior action.  The new evidence to which Seghers refers is a NASD press release dated December 19, 2006, publicizing the fact that the NASD charged Morgan Stanley with failing to provide emails to arbitration claimants in the period from October 2001 to March 2005.  This argument may be relevant to whether Seghers's claims in the Texas Arbitration would be barred by the doctrine of claim preclusion,[10] but has no relevance to Seghers's waiver of arbitration.

Finally, Seghers argues that FINRA's August 4, 2010 denial of Morgan Stanley's request for a stay of the Texas Arbitration demonstrates that he is likely to succeed on the merits in the arbitration.  The letter denying the request for a stay makes no mention of the merits of Seghers's claims and is insufficient to show any likelihood that Seghers will succeed on the merits in this action on the issue of waiver.

   2.   Irreparable Harm

The plaintiff has demonstrated that, absent an injunction, it will suffer irreparable harm.  Morgan Stanley has offered evidence that it will be irreparably injured if the preliminary

---

[10] Seghers made substantially the same argument in the 2006 SDNY Action, arguing that his fraud claim was timely because Morgan Stanley had withheld the facts underlying the fraud claim until 2003 or 2004.  The court rejected this argument, finding that Seghers had actual knowledge of the facts underlying the fraud claim in July 2001.  2006 SDNY Action, 2007 WL 1404434, at *5 & n.3.

17

injunction is not granted because there is no provision in the FINRA Code of Arbitration Procedure that would allow Morgan Stanley to bring a motion to dismiss the Texas Arbitration before an evidentiary hearing. Absent the injunction, Morgan Stanley will have to expend time and resources defending itself in the arbitration. There has been no showing that the plaintiff's attorney's fees in the Texas Arbitration would be recoverable from the defendant, either legally or practically, in the event that the plaintiff succeeded in the arbitration. These expenditures, especially where the arbitrability of the issues or the enforceability of any arbitration award is the subject of significant doubt, are an irreparable injury sufficient to support a preliminary injunction. Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 129 (2d Cir. 2003).

    Moreover, in addition to irreparable harm to Morgan Stanley's financial interests, the plaintiff faces irreparable injury to its interests in the finality of the litigation between itself and Seghers. The 2006 SDNY Action was decided on the grounds that the Texas statute of limitations barred Seghers's claims. Statutes of limitations entitle parties to predictability and repose. Veltri v. Bldg. Serv. 32 B-J Pension Fund, 393 F.3d 318, 326 (2d Cir. 2004). Having to arbitrate issues that have been finally determined by litigation is an

18

injury for which plaintiff could not be adequately compensated after the fact.

       3.    Balance of Hardships and the Public Interest

The balance of hardships tips in favor of the plaintiff in this case. Morgan Stanley has shown that, without an injunction, it would have to expend time and resources participating in the Texas Arbitration because it cannot bring a motion to dismiss before the hearing. Seghers has not identified any hardship that he will suffer from the delay of the Texas Arbitration if he is ultimately successful in the present action.

The public interest strongly favors granting the preliminary injunction. There is a significant public interest in conserving judicial and arbitration resources by preventing duplicative proceedings. Seghers argues that the public interest favors allowing the Texas Arbitration to go forward because Morgan Stanley has avoided responsibility for wronging him for nearly a decade. Absent any showing by Seghers that he is likely to succeed on the merits, however, this argument is rejected.

III. Conclusion

Morgan Stanley's July 29 motion for a preliminary injunction is granted.


SO ORDERED:

Dated:   New York, New York
         October 8, 2010

                                    _____
                                           DENISE COTE
                                    United States District Judge